In the Matter of MARY F. DALEY, Appellant, against BOARD OF ESTIMATE OF THE CITY OF NEW YORK et al., Respondents.

Second Department, May 1, 1944.

*John F. X. Browne* for appellant.

*Ignatius M. Wilkinson, Corporation Counsel, Henry J. Shields* and *James Hall Prothero,* for respondents.

Lewis, J. The petitioner, Mary F. Daley, is the widow of Frank E. Daley, a member of the New York City Employees' Retirement System, who died on May 27, 1938, as the result of a coronary thrombosis. The petitioner claims the thrombosis was induced by an accident or accidents which occurred during the last week in December, 1937, when Daley, in the course of his employment as a tractor and grader operator in the office of the Queens Borough president, sustained a heart injury and collapsed under the unusual effort and strain to which he was subjected in attempting to crank a grader which had been exposed to the elements for a long period of time.

By its resolution dated March 9, 1939, the Board of Estimate of the City of New York, acting upon a report of its Bureau of Retirement and Pensions, and a certification of the Medical Board of the Retirement System that Daley's death was not the natural and proximate result of an accident sustained while a member and while in the performance of duty, denied petitioner's application for an accidental death pension but awarded her an ordinary death benefit. By this proceeding, instituted under article 78 of the Civil Practice Act, the petitioner sought to have the resolution of the Board of Estimate vacated and

to obtain an adjudication that she was entitled to an accidental death pension. The action of the Board of Estimate was sustained at Special Term on the ground that " there was evidence before the board from which it could be inferred that the death of the decedent was not caused by any injuries sustained while at work."

Section B3–33.0 of the Administrative Code of the City of New York (L. 1937, ch. 929), so far as pertinent, provides:

" *Death benefits; accidental death benefits.*— Upon the accidental death of a member before retirement, provided that evidence shall be submitted to such board proving that the death of such member was the natural and proximate result of an accident sustained while a member and while in the performance of duty at some definite time and place and that such death was not the result of wilful negligence on his part, his accumulated deductions shall be paid to his estate, or to such persons as he has nominated or shall nominate by written designation, duly acknowledged and filed with such board. Upon application by or on behalf of the dependents of such deceased member, such board shall grant a pension of one-half of the final compensation of such employee: 1. To his widow, to continue during her widowhood." The " board " referred to in the section is the Board of Estimate. The petitioner rightfully contends that the requirements of this section were not complied with because the determination that Daley's death had not been accidentally caused was not made by the Board of Estimate, but by the Medical Board of the Retirement System.

The respondents' answer to the widow's petition includes a defense, supported by exhibits, which purports to show the grounds upon which the respondents acted. The exhibits show that the resolution of the Board of Estimate denying the petitioner's application was based upon a report of its Bureau of Retirement and Pensions, and a certification of the Medical Board of the Retirement System that Daley's death was not accidentally caused.

The report of the Bureau of Retirement and Pensions dated February 27, 1939, is also labeled as a " Report of New York City Employees' Retirement System." It informed the Board of Estimate that " The records on file in the Office of the President of the Borough of Queens indicate that on May 19, 1938, Frank E. Daley filed notice that while working in the Sunrise Corporation Yard on December 26 or December 27, 1937, he injured his heart while cranking a department grader and ' felt very sharp pain in chest which caused me

to go to the ground for about five minutes.' There is no record or testimony corroborating his claim. He did not consult a physician until January, 1938.''

The Bureau's report further informed the Board of Estimate that '' The Medical Board having considered all of the facts in the case certified on December 21, 1938, that there is no doubt that Mr. Daley suffered from a chronic cardiac disease; that there is no connection between this condition and the alleged accident of which there is no proof and that the death of Frank E. Daley was *not* the natural and proximate result of an accident sustained while a member and while in the performance of duty but was due to natural causes and therefore recommends that the application for accidental death pension be *denied*.''

The report also advised the Board of Estimate that the petitioner had requested reconsideration of her application and that '' On January 26, 1939, the Medical Board reconsidered the application and after reviewing the record and the medical history and reading the statements in the affidavits of Mary F. Daley and Dr. Milton H. Morris and other documents presented on January 18, 1939, by Mrs. Daley's attorney, the Medical Board reaffirmed its findings of December 21, 1938, that Frank E. Daley suffered from a chronic heart disease, that his death on May 27, 1938, was caused by coronary thrombosis in no way related to the alleged accident, and that the application for accidental death pension should be denied.'' The Bureau's report concluded with the statement that '' In view of the action of the Medical Board '' there was submitted therewith for the Board's consideration a resolution denying the petitioner's application.

Although the Bureau's report to the Board of Estimate stated that Daley had not consulted his physician until January, 1938, it did not advise the Board that the affidavits of the petitioner and Dr. Morris indicated that the doctor had been called to Daley's home on December 31, 1937. The report stated that there was '' no record or testimony corroborating '' the claim that Daley was injured at work; despite the fact, revealed by the respondents' answer, that the Retirement System had in its possession the sworn testimony of the petitioner, Dr. Morris and Dr. Khodoff, Daley's physicians, as well as reports of the city-employed physician, Dr. Pardee, and of the Queens Borough president's office furnishing such corroboration. We do not pass upon the probative value of those affidavits and reports. We merely point to their existence to illustrate inaccuracies in the Bureau's report and to demonstrate the patent falsity of

the allegation of the respondents' defense that the Bureau "submitted a report to the Board of Estimate of all the facts with reference to the application."

The report of the Bureau of Retirement and Pensions, and the Medical Board reports upon which it rested, did not disclose to the Board of Estimate the evidence upon which the Medical Board had reached its conclusion that Daley had died of natural causes. The Board of Estimate was not advised, as is now revealed by the respondents' answer, that the Medical Board had relied in part upon the unsworn negative hearsay testimony of two of Daley's "fellow workers." The Board of Estimate, therefore, cannot be said to have passed upon the value of such testimony. So far as the record shows, none of the sworn statements which had been submitted by the petitioner in support of her claim was placed before the Board of Estimate. Nor did the report of the Bureau of Retirement and Pensions attempt to relate the substance of these statements. We are compelled to conclude, therefore, that the petitioner is correct in her contention that her claim was actually determined by the Medical Board, rather than by the Board of Estimate.

The respondents do not dispute that the responsibility of making the determination rested with the Board of Estimate. The Board, as constituted under section 61 of the New York City Charter (1938), has been continued under subdivision "a" of section 71 of the Charter in the position of "head of the New York City employees' retirement system," which it held under section 1704 of the Greater New York Charter (L. 1901, ch. 466). They contend however, that the report of the Medical Board was authorized and was of a preliminary nature only, since it was followed by the report of the Pension Bureau.

The respondents contend that the Medical Board report was made pursuant to rule 8 of the Rules and Regulations of the Board of Estimate and Apportionment for the Administration and Transaction of Business of the New York City Employees' Retirement System, adopted in 1924, requiring the Medical Board to pass upon all medical examinations needed in the operation of the Retirement System "including review and report upon the medical aspects of all claims that death was the natural and proximate result of an accident sustained while a member and while in the performance of duty at some definite time and place, and was not the result of willful negligence". The rule contained the following reservation of power: "Notwithstanding the foregoing rule the Board of Estimate and Apportion-

ment shall have the power to determine whether or not the accident resulting in death was sustained in the performance of duty and whether or not such death was the result of willful negligence."

The validity of the foregoing rule is not questioned by the petitioner. And there may be sufficient authority for the promulgation of such a rule in the provision of section 71 of the New York City Charter (derived from Greater New York Charter, § 1704) that the Board of Estimate "shall, subject to the provisions of law, from time to time establish rules and regulations for the administration and transaction of the business of the system." We do not doubt the power of the Board of Estimate to place upon specially trained subordinates the duty of investigating and reporting on the many matters upon which the Board is required to pass judgment. Nor do we doubt the propriety of having such reports made by the Medical Board (as constituted under section B3–13.0 of the Administrative Code) and by the Bureau of Retirement and Pensions, which was created in 1938 as a bureau "under" the Board of Estimate pursuant to subdivision 5 of section 66 of the New York City Charter. But the Medical Board "report" did not place before the Board of Estimate the information that had been submitted by the petitioner or the additional information which had been obtained by the Retirement System investigation. It withheld the facts upon which its recommendation was based. Instead, it set forth the Medical Board's *conclusions* on the issues which the Board of Estimate had the responsibility of deciding. And the Board of Estimate simply accepted those conclusions. We cannot subscribe, therefore, to the respondents' argument that the Medical Board's action in this case was of "a preliminary nature only."

The respondents argue that the Medical Board's report on the cause of Daley's death cannot be disturbed in the absence of a showing of fraud, bad faith or mistake, citing *Matter of Rosenberg* v. *Board of Estimate of City of N. Y.* (257 App. Div. 839, affd. 281 N. Y. 835); *Matter of Nilsson* v. *LaGuardia* (259 App. Div. 145); *Matter of Eichler* v. *McElligott* (259 App. Div. 151, affd. 283 N. Y. 716); *Matter of Thomasson* v. *Valentine* (263 App. Div. 334). Each of these cases arose in connection with accidental disability retirements and is therefore distinguishable.

The various statutory provisions governing accidental disability retirements are radically different from the provisions controlling the petitioner's application for accidental death

benefits. The statutes controlling the retirement of policemen and firemen for disability vest the heads of those departments with the power and duty of deciding issues of disability as a matter of discretion. Section B3–40.0 of the Administrative Code, which governs accidental disability applications made by a member of the New York City Employees' Retirement System or the head of his city agency, requires the member to submit to a medical examination, and further provides: " If such medical examination and investigation shows that such member is physically or mentally incapacitated for the performance of city-service as a natural and proximate result of an accidental injury received in such city-service while a member, and that such disability was not the result of wilful negligence on the part of such member and that such member should be retired, *the medical board shall so certify to the board* stating the time, place and conditions of such city-service performed by such member resulting in such disability, and such board *shall* retire such member for accident disability forthwith." (Italics ours.) In disability cases, the responsibility for certification or determination is thus placed upon the Medical Board of the Retirement System. Its certifications of disability have, therefore, been held to be binding upon the Board of Estimate. (*Matter of Nilsson* v. *LaGuardia, supra.*) This court upheld a certification of the Medical Board in a disability retirement case where there was no proof of abuse of discretion. (*Matter of Rosenberg* v. *Board of Estimate of City of N. Y., supra.*) Our decision in that case, which was affirmed (281 N. Y. 835) on the ground that it was amply supported by the evidence, was controlled by the provisions of section B3–40.0 and not, as the respondents contend, by the statutory provision governing the petitioner's claim. Since section B3–40.0 of the Administrative Code applies only to disability retirement applications, the decisions made thereunder in the *Nilsson* and *Rosenberg* cases may not be regarded as prescribing the effect to be given to a certification made by the Medical Board as to a death benefit claim.

In *Matter of Newbrand* v. *City of Yonkers* (285 N. Y. 164) the court, in a proceeding brought under article 78 of the Civil Practice Act, construed a Yonkers local law providing that the Board of Trustees of the Pension Fund " shall grant pensions * * *: To the widow of any member of the police force who * * * shall have died from the effect of any injuries received in the actual discharge of such duty." The record showed that Edward Newbrand, a member of the police force, had died on

March 25, 1938; that his widow's claim that her husband's death was due to injuries sustained in the actual discharge of his duties in 1926 had been rejected by the Board of Trustees; and that the Board's minutes of its meeting of May 16, 1938, stated that " ' attached to Mrs. Newbrand's claim was an affidavit or letter from Dr. Leon A. Giammette, supporting her contention. After due consideration and an opinion from the Corporation Counsel's office, the Trustees unanimously decided to disallow Mrs. Newbrand's claim for additional compensation.' " The Yonkers Corporation Counsel had advised the Board " ' that I have very carefully examined the file on this matter, and find that no legal evidence that would entitle Mrs. Newbrand to a pension amounting to one-half of the salary of above deceased officer * * * exists.' " The Board of Trustees also had before it a letter from the Police Department's surgeon stating, in part, " ' the only opinion I can express * * * as to the causation of the patrolman's recent illness, is, that it is too ridiculously absurd that it is unworthy of any further comment.' " It did not appear that the Board of Trustees in rejecting the claim had before it any information or evidence other than the letter of the Corporation Counsel and the police surgeon.

In remitting the proceeding to the Board of Trustees, the court stated that the Board had no discretion to grant or withhold such pension after the fact of death from the effect of injuries received in the discharge of police duty had been established, and that the question of fact to be determined by the Board was whether Newbrand had died from the effect of injuries received in the discharge of duty twelve years before his death. The court pointed out that the local law did not in express terms prescribe how the fact, if disputed, was to be established and who should determine that fact where there was conflicting proof, or where conflicting inferences might be drawn. It decided, nevertheless, that by necessary implication this duty was placed upon the Board of Trustees.

Despite the fact that the Yonkers local law contained no express provision defining the manner in which it was to proceed in making its determination, the court held that the nature of the right to a pension conferred by the law, under the specified circumstances, indicated unequivocally that the claimant was entitled to a fair opportunity to present both proof and argument to sustain her claim and to have a record presented which would enable the determination to be reviewed when challenged. The court declined to define the nature or source

of the information or proof upon which the Board of Trustees might act or the procedure it should adopt in order to give the claimant a fair opportunity to establish her claim.

The court in the *Newbrand* case stated in conclusion that although it did not doubt that under proper safeguards the Board of Trustees " might seek advice and information from the Corporation Counsel and police surgeon, the responsibility of determining the claim was placed solely upon the Board and may not be shifted by the Board," and that " at least the claimant should have been informed that the trustees received and acted upon the affidavit of the surgeon and should have been given opportunity to object to its reception or to controvert the allegations contained therein."

Section B3–33.0 of the Administrative Code, like the local law construed in the *Newbrand* case, must be deemed to make the payment of a pension mandatory where evidence has been submitted to the Board of Estimate proving that the death of a member of the Retirement System was the natural and proximate result of an accident sustained while a member in the performance of duty at some definite time and place and not as the result of willful negligence. The section clearly imposes upon the claimant the burden of submitting proof of those facts and just as clearly places upon the Board of Estimate the responsibility for determining, after a hearing, whether those facts have been established. Like the Yonkers local law, the Administrative Code section contains no express provision defining the manner in which the Board must proceed in order to make its determination. We have already indicated that the Board may require its Bureau of Pensions and the Medical Board of the Retirement System to investigate and report to it. The Board need not accede to the petitioner's request that it disclose to her the contents of its files. But if, upon reconsideration, the Board intends to rely in part upon the unsworn testimony of Daley's fellow employees to contradict petitioner's claim that she and Daley reported the alleged accident soon after its occurrence, the petitioner should be permitted to object to the consideration of such testimony or to controvert the allegations contained therein. We need now go no further in defining the nature or source of the information upon which the Board of Estimate may act, or the procedure which it should adopt in order to give the petitioner a fair opportunity to establish her claim and to create a record which may be presented for judicial review. We find, however, that the procedure that was followed was arbitrary and contrary

to law and calculated to deprive the petitioner of her right to have the Board of Estimate determine the merits of her claim.

The respondents seek, however, to sustain the decision of Special Term upon the further ground that coronary thrombosis is recognized as a disease and that death resulting from thrombosis may not be regarded as an accident. They cite *Wachtel v. Equitable Life Assur. Soc.* (266 N. Y. 345). But that case is not controlling, because for the purposes of that litigation the parties conceded that coronary thrombosis was a disease. And the question before the court was the narrow one of whether proofs of death were sufficient to show that death had been caused *exclusively* by accidental means. Other cases have held that a coronary thrombosis or occlusion may result from accidental overexertion. (*McGrail v. Equitable Life Assur. Soc.*, 292 N. Y. 419; *Matter of Altschuler v. Bressler,* 289 N. Y. 463; *Matter of McCormack v. Wood Harmon Warranty Corp.,* 288 N. Y. 614; *Matter of Bacher v. Herschkowitz Bros. & Lowenthal,* 245 App. Div. 876; *Eisen v. Jacquard Fabrics, Inc.,* 19 N. J. Mis. R. 526.) In the instant case the report of Dr. Pardee, the physician to whom the City sent Daley for examination in April, 1938, indicates that Daley might have " suffered a definite cardiac damage due to physical strain." It is not possible, therefore, to justify the rejection of the petitioner's claim on the ground that, as a matter of law, the thrombosis could not have been caused accidentally.

We do not now pass upon the sufficiency or quality of the evidence which was submitted by the petitioner to prove her claim. It is the statutory duty of the Board of Estimate to pass upon those questions in the first instance. In order that it may do so, the order of Special Term should be reversed on the law, with fifty dollars costs and disbursements, the resolution of the Board of Estimate dated March 9, 1939, denying the petitioner's application annulled, and the proceeding remitted to the Board of Estimate to proceed in accordance with this opinion.

HAGARTY, Acting P. J., CARSWELL, ADEL and ALDRICH, JJ., concur.

Order denying petitioner's motion to vacate the resolution of the Board of Estimate dated March 9, 1939, which denied petitioner's application for an accidental death benefit, reversed on the law, with fifty dollars costs and disbursements, the said resolution annulled, and the proceeding remitted to the Board of Estimate to proceed in accordance with opinion by LEWIS, J.