In the Matter of Anna D. Kilgus, Appellant, against Board of Estimate of the City of New York et al., Respondents.

Argued January 13, 1955; decided June 9, 1955.

*Archibald Goldstein, Bernard Rosenberg* and *Isidore Miller* for appellant. I. The board of estimate, in making its determination denying petitioner's application, did so capriciously and arbitrarily in that it failed to consider the testimony submitted to the trial committee and it adopted the findings and recommendations of the trial committee because it felt bound by such findings and recommendations, thereby, in effect, causing petitioner's application to be determined by the trial committee instead of by the board of estimate, which amounted to an abdication of the board's office to determine the merits of petitioner's application by the board. (*Matter of Daley* v. *Board of Estimate of City of N. Y.*, 267 App. Div. 592; *Matter of Weekes* v. *O'Connell*, 304 N. Y. 259; *Matter of Elite Dairy Products* v. *Ten Eyck*, 271 N. Y. 488; *Matter of Ralph* v. *Board of Estimate of City of N. Y.*, 280 App. Div. 942.) II. The report and testimony of the toxicologist, Gettler, should not have been permitted in evidence and should have been stricken therefrom because of failure to identify the liver analyzed by him as the liver of the deceased. (*Gardam & Son* v. *Batterson*, 198 N. Y. 175.) III. Gettler's report and testimony were improperly admitted into evidence as a matter of law. (*Darcy* v. *Presbyterian Hosp.*, 202 N. Y. 259; *Wehle* v. *United States Mut. Acc. Assn.*, 153 N. Y. 116; *Hassard* v. *Lehane*, 150 App. Div. 685; *Beller* v. *City of New York*, 269 App. Div. 642; *Gould* v. *State of New York*, 181 Misc. 884; *Novitsky* v. *Knickerbocker Co.*, 276 Ill. 102; *Felska* v. *John Hancock Mut. Life Ins. Co.*, 144 Misc. 508.) IV. The accidental death by electrocution of the deceased having been established, and the trial committee having failed to find the deceased intoxicated, there can be no finding of willful contributory negligence resulting in the death of deceased. (*Weidy* v. *Prudential Ins. Co.*, 256 App. Div. 778; *Bolger* v. *Prudential Ins. Co.*, 250 App. Div. 122.) V. The trial committee was justified in rejecting respondents' contention that decedent was intoxicated. (*Trimble* v. *City of New York*, 275 App. Div. 169.)

*Leo A. Larkin, Acting Corporation Counsel* (*Henry J. Shields* and *Seymour B. Quel* of counsel), for respondents. I. Peti-

tioner cannot argue in this proceeding that the members of the board of estimate failed to consider the record herein. That allegation is not pleaded in the petition and the petitioner failed to traverse by reply the allegations of paragraph Twenty-fourth of the answer that the members of the board of estimate carefully examined the entire record prior to the public hearing of the board. (*Matter of Hines* v. *La Guardia*, 293 N. Y. 207; *Entress* v. *Sours*, 272 App. Div. 861; *Matter of Marasco* v. *Morse*, 263 App. Div. 1063, 289 N. Y. 768; *Morgan* v. *United States*, 304 U. S. 1; *Norris & Hirshberg* v. *Securities & Exch. Comm.*, 163 F. 2d 689; *Cunard S. S. Co.* v. *Elting*, 97 F. 2d 373; *Matter of Weekes* v. *O'Connell*, 304 N. Y. 259; *Matter of Miller* v. *Kling*, 291 N. Y. 65; *Matter of Humphrey* v. *State Ins. Fund*, 298 N. Y. 327; *Matter of Tiernan* v. *Walsh*, 294 N. Y. 299; *Matter of Donahue* v. *Fletcher*, 299 N. Y. 227; *Matter of Lynch's Bldrs. Restaurant* v. *O'Connell*, 303 N. Y. 408; *Matter of 54 Cafe & Restaurant* v. *O'Connell*, 274 App. Div. 428, 298 N. Y. 883.) II. Petitioner did not establish a prima facie case by showing only that the deceased member died during his tour of duty, presumably from accidental cause. (*Cordell* v. *New York Central & H. R. R. R. Co.*, 75 N. Y. 330; *Riordan* v. *Ocean S. S. Co.*, 124 N. Y. 655; *Wieland* v. *Delaware & Hudson Canal Co.*, 167 N. Y. 19; *Perez* v. *Sandrowitz*, 180 N. Y. 397; *Matter of McCormack* v. *National City Bank*, 303 N. Y. 5; *Hansen* v. *City of New York*, 274 App. Div. 196.) III. Petitioner's objection that Dr. Gettler's status as toxicologist in the office of the medical examiner disqualified him from giving testimony in a civil proceeding does not find support in authority.

CONWAY, Ch. J. John Kilgus, deceased husband of petitioner, had been employed by the board of transportation of the City of New York as a car maintainer, and was a member of the city's employees' retirement system. On July 9, 1946, the decedent was assigned to duty at the subway yards at Tenth Avenue and 211th Street in New York City. His tour was to run from 1:00 A.M. to 9:00 A.M. At about 6:00 A.M., he was found lying against a live third rail in those yards, and died thereafter, as the result of injuries caused by the electricity.

The petitioner widow filed a claim for accidental death benefits pursuant to section B3–33.0 of the Administrative Code of the City of New York, the applicable part of which reads as follows: "Death benefits; accidental death benefits.— Upon the acci-

dental death of a member before retirement, provided that *evidence shall be submitted to such board proving* that the death of such member was the natural and proximate result of an accident sustained while a member and while in the performance of duty at some definite time and place and that such death was not the result of wilful negligence on his part, his accumulated deductions shall be paid to his estate, or to such persons as he has nominated or shall nominate by written designation, duly acknowledged and filed with such board. Upon application by or on behalf of the dependents of such deceased member, such board shall grant a pension of one-half of the final compensation of such employee: 1. To his widow, to continue during her widowhood; * * *". (Emphasis supplied.)

On February 6, 1947, two members of the medical board of the retirement system considered the application to determine whether the death of the decedent was the result of an accident sustained while in the performance of duty without willful negligence on his part. On the basis of a chemical analysis of a portion of a liver, alleged to be that of decedent, made by a toxicologist in the city medical examiner's office, which analysis, according to him, showed the presence of ethyl alcohol to the extent of 3 plus, the medical board expressed the opinion that the deceased was willfully negligent in imbibing alcohol while participating in a hazardous occupation and recommended that the application for an accidental death pension be denied. The board of estimate, acting on that recommendation, adopted a resolution denying petitioner's application. Thereafter, at the request of petitioner, the board of estimate reopened its decision and ordered a hearing on the matter before a trial committee consisting of an appointee of the board.

At the hearing the decedent's foreman testified that he saw Kilgus at about 1:15 A.M. on the morning of July 9th, at which time he sat alongside decedent and conversed with him, while Kilgus ate sandwiches. At that time, he said, the decedent was not intoxicated. Thereafter, at about 4:30 A.M., but one and one-half hours before the discovery of his body, the foreman again saw Kilgus as the decedent was going to obtain some material to use on work to be done on one of the tracks. The foreman stated that decedent was not intoxicated at that time.

He further testified, on cross-examination, that at no time did decedent's breath smell of alcohol.

Extensive medical testimony was adduced — on behalf of respondents, from the toxicologist, and on behalf of petitioner from a Dr. Leon A. Greenberg, assistant director of the laboratory of applied physiology and the section on alcohol studies at Yale University.

The former testified that he examined a part of the deceased's liver which he said he had received from the medical examiner, and found alcohol present in the amount of .38%. According to his testimony, the presence of that amount of alcohol in the liver was indicative of a similar percentage in the brain, where a ''three plus'' amount results in intoxication. On cross-examination this witness first stated that the authorities on the subject of alcoholism did not disagree with his theories, then later admitted that others did disagree with him. He had also stated, however, on direct examination that there might be a difference of as much as .14% in the alcohol content of liver and brain. That might have reduced the brain-alcohol content of decedent here to but .24%, which would not have caused staggering.

Dr. Greenberg testified that after alcohol reaches the stomach and intestines, it is absorbed into the blood which passes first through the liver and then on to the other parts of the body including the brain. During the initial period of absorption, Dr. Greenberg said, the percentage of alcohol in the liver may be as much as six times as great as in the brain, and the percentage in the liver will always be greater than in the brain so long as alcohol is being absorbed from the intestines and the stomach. From an examination of the liver it would be impossible, said Dr. Greenberg, to ascertain whether an ounce '' or even a quart '' had been consumed — all would depend upon whether the process of absorption by the blood had ended or was still continuing. He also testified that the American Medical Association, as well as the National Safety Council, does not rely upon analyses of the liver, but of the concentration of alcohol in the blood to determine the degree of intoxication.

A sharp conflict in expert testimony was thus presented.

After hearing and analyzing the evidence, the trial committee, consisting of one employee of the board, concluded that '' the

death of the deceased was the result of willful negligence on his part in imbibing alcohol in violation of the rules of his employment and while engaged in duties requiring a high degree of care and responsibility, to himself for his own safety and to others for their safety."[*] Accordingly, it was recommended that the application for accidental death benefits be denied.

A transcript of the minutes of the hearing, as well as the report of the trial committee and other papers, was presented to each member of the board of estimate prior to October 26, 1949. On that day the board met, discussed the application, and denied it.

In a proceeding for accidental death benefits under section B3–33.0 of the Administrative Code, the board of estimate is under a statutory duty, in the first instance, to pass upon the questions of sufficiency and quality of the evidence submitted by the petitioner in support of her claim (see *Matter of Daley* v. *Board of Estimate of City of N. Y.*, 267 App. Div. 592, 602). It may appoint a trial committee, which here consisted of one nonelected employee of the board, to assist it in its consideration of the problems presented by the application, but may not adopt the report of such a committee without independent consideration of the sufficiency and quality of the evidence adduced before the trial committee since this latter duty is required of the board by statute, i.e., the Administrative Code. The question here presented is whether the board discharged this statutory duty. Petitioner contends that it did not; that three members of the board, possessing a majority of the votes, adopted the recommendation of the trial committee because they felt bound by its findings, making no independent determination of the matter themselves, in the belief and expectation that the courts would make a full review of the case and remedy any error on their part. In our judgment, petitioner must prevail on this appeal for a reading of the following excerpts from the record discloses that the board underestimated its own power and duty and overestimated the power of the courts upon review, thereby failing to exercise its duty of rendering independent judgment on the merits of the case:

"* * * Well, in voting I would like to say this, that I am going to vote to support the report of the Trial Committee *for*

---

[*] Rule 11 (subd. [a]) of the rules of the board of transportation of New York City prohibits employees from carrying or indulging in alcoholic beverages while in the course of their work.

*the reason* that we appointed it and it sat and heard the testimony, but in doing this I am not attempting in any way to prejudice the right of counsel for the deceased *to go into the courts and have a correct adjudication of this case.* * * * I feel that the counsel will go into the courts and finally adjudicate this. *For that reason, at the moment I will vote to sustain the Trial Committee.*" (Emphasis supplied.)

" * * * It seems to me here that you have appointed a Trial Committee. The Trial Committee inquired into the factual situation. The claimant, if he goes *before a court rather than before this Board, will be given a full and complete opportunity to raise these questions* as to whether or not there was the proper admissibility of evidence or anything of that kind, *which I don't believe it's within the province of this Board to do.* I think that while it's true we have a right to review the facts as found by the Trial Committee, that nevertheless where there's a conflict in the witnesses' evidence, all before the Committee and not before us, questions of credibility and other things that may have entered into the findings of this Committee, *since you will be protected and have a full and complete hearing before the courts, I think, in the absence of an absolute establishment of overwhelming proof that the Trial Committee was in error, that we ought to sustain the findings of the Trial Committee and let the courts give you your full day to be heard and to prove your case there* " (emphasis supplied).

" * * * Gentlemen, this Board has appointed a Trial Commission [*sic*] because this is an unusual case. You have just heard there's been three days of examination by experts and there's 121 pages of testimony. *The counsel has said that he has the right to go into court.* * * * those are the people that we have asked to sit here, this Trial Committee. They have reported to us that this be denied and I move it at this time, sir" (emphasis supplied).

The findings of the trial committee were in no way binding upon the board and the board was mistaken in thinking that, in the absence of an "absolute establishment of overwhelming proof " that the trial committee was in error, its finding should be sustained by the board. As stated earlier, it was the duty of the board, in the first instance, to pass upon the questions of sufficiency and quality of the evidence submitted by the petitioner in support of her claim. The board likewise did not

appreciate the full effect that its determination would have on the review available to petitioner in the courts. In the review of determinations of administrative bodies, the power of the courts is narrowly circumscribed (see *Swayne & Hoyt, Ltd.*, v. *United States*, 300 U. S. 297; *Rochester Tel. Corp.* v. *United States*, 307 U. S. 125; *Matter of Colgate-Palmolive-Peet Co.* v. *Joseph*, 308 N. Y. 333; *Matter of Weekes* v. *O'Connell*, 304 N. Y. 259). " ' The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body ' " (*Rochester Tel. Corp.* v. *United States, supra*, p. 146). The scope of review by the courts of determinations of administrative bodies is not the same as the review, for example, by the Appellate Division of the judgments of lower courts in jury cases, where the Appellate Division may review the facts as well as the law, and set aside the determination and order a new trial if that court finds it to be against the weight of the evidence or, in a nonjury case, where the Appellate Division has the same power to review the record and decide the questions of fact as the trial court (see Civ. Prac. Act, § 608; Cohen and Karger, Powers of the New York Court of Appeals, § 110, p. 468 *et seq.*). On the other hand, as phrased in the Civil Practice Act (§ 1296), the only issues as to the findings of fact by administrative bodies which may be reviewed in the courts are: "Whether there was *any competent proof* of all the facts necessary to be proved in order to authorize the making of the determination" (subd. 6; emphasis added) and "If there was such proof, whether, upon all the evidence, there was *such a preponderance of proof* against the existence of any of those facts that the verdict of a jury, affirming the existence thereof, rendered in an action in the supreme court triable by a jury, would be set aside by the court as against the weight of evidence" (subd. 7; emphasis added).

Because of the strict limitation on the power of courts to review the findings of administrative bodies, we have felt impelled to declare (*Matter of Weekes* v. *O'Connell, supra*, p. 266): "Their findings being subject only to limited judicial review, administrative agencies should ever be mindful of the heavy responsibility thereby imposed, and that responsibility should dictate conscientious and painstaking assessment of the evidence presented."

The board of estimate had not only a right to review the facts as found by the trial committee, but a statutory duty and

responsibility to do so (*Matter of Daley* v. *Board of Estimate of City of N. Y.*, 267 App. Div. 592, 602, *supra*) — particularly in view of the very limited review of the findings of fact which the courts have decided they may make. The language of three members of the board, quoted above, shows a misconception of their function as administrative officers in a matter vitally affecting the outcome of the decision. The determination of the board must, therefore, as a matter of law, as well as in the interest of justice and for the sake of affording the petitioner a full and fair hearing to which she is entitled by statute, be set aside and the matter returned to the board for a proper consideration. That petitioner had a prior hearing before the board of estimate is, of course, immaterial; for having reopened its decision for the consideration of new evidence, the board came under the same statutory duty imposed upon it in the first instance.

We are mindful of the rule that it is " not the function of the court to probe the mental processes of the * * * [deciding officer] in reaching his conclusions " (*Morgan* v. *United States*, 304 U. S. 1, 18; *Matter of Weekes* v. *O'Connell, supra*, p. 265). But, we do not " probe " the mental processes when we hold that statements made by members of the board, having a majority of the votes, clearly reveal that they made no independent appraisal and reached no independent conclusion (cf. *Morgan* v. *United States,* 304 U. S. 1, *supra*). We merely repeat their own statements of their own mental processes in reaching their conclusions.

The order appealed from should be reversed, with costs in this court and in the Appellate Division, and the matter remitted to Special Term for further proceedings in accordance with the opinion herein.

FULD, J. (dissenting). By attaching too much importance to certain random remarks made by three important public officers of the City of New York and by according those men too little credit for responsible and conscientious performance of their official duties, a majority of this court is holding that the board of estimate abandoned its duty and denied petitioner's application without considering the evidence bearing on the matter. The record may not be read to support such a conclusion.

Following the death of John Kilgus, an employee on the city's subways, his widow, petitioner herein, sought accidental death benefits under the New York City employees' retirement system. It was incumbent upon her to prove that her husband's death was " the natural and proximate result " of an accident sustained by him " while in the performance of duty " and that it was " not the result of wilful negligence on his part " (Administrative Code of City of New York, § B3–33.0). The application was denied on the ground that Kilgus had been " imbibing  *  *  *  alcohol while assigned to duty, and in violation of the Rules and Regulations of his employment "[1] and that, in consequence, his death was not " without wilful negligence on his part."

This is not the first time, it is worthy of note, that the board of estimate denied petitioner's application after a hearing. After the application had been twice denied by the medical board of the city's retirement system — which first considers the claim in this sort of case — it came before the board of estimate in February of 1949. The board denied the application at that time — according to the sworn statement of its various members — after having " considered all the facts and evidence upon which the Medical Board acted ". Petitioner then requested, and the board ordered, a hearing before a trial committee, which heard, sifted and analyzed 121 pages of testimony, found that Kilgus had been drunk while at work and that he was guilty of willful negligence, and recommended that the application be denied. The matter then came before the board for a second hearing, the one now under attack.

That Kilgus had partaken of a quantity of alcohol on the fatal night, in violation of regulations, there can be little doubt. In the course of the extensive medical testimony taken at the trial committee's hearings, Dr. Alexander O. Gettler, a toxicologist in the city medical examiner's office, who is recognized as an outstanding expert, testified that chemical analysis

1. Rule 11, subd. (a), of the Rules and Regulations governing employees of the New York City transit system provides that: " Employees must not indulge in intoxicating liquor or be under its influence while on duty or in uniform, nor must they report for or be on duty in an unfit condition. They must not be in possession of or carry intoxicating liquors on the System property at any time. The habitual use of intoxicating liquor or the indulgence therein to excess at any time is prohibited. Alcoholic breath, incoherent speech or staggering is prima facie evidence of being in an unfit condition."

of Kilgus' body revealed more than 3-plus alcohol, namely, .38%, in his liver, indicating a similar quantity in his brain; and that such analysis not only demonstrated intoxication — with its concomitant " muscular incoordination and disturbed senses * * * disturbed equilibrium and a staggering gait " — but what was no less important, the imbibing of alcohol by an employee while on his job.

There was contending testimony, on petitioner's behalf, also by an expert, to the effect that 3-plus alcohol in the liver does not necessarily indicate intoxication since the amount of alcohol in the brain might be less than that in the liver. Other witnesses, who had seen Kilgus that night — though none later than an hour and a half before he was found lying upon the subway's third rail — testified that when they saw him he did not stagger or speak incoherently or smell of alcohol. Relying on the evidence adduced in her support, petitioner argues here, as she did before the board, that the rules only forbade excessive drinking, and that it was not shown that her husband had imbibed more than moderately. In addition, she objected to the admission of Dr. Gettler's testimony concerning the amount of alcohol in the deceased's liver, on the ground that the liver had not been properly identified as Kilgus' and that the doctor's position in the office of the city medical examiner disqualified him from testifying.

As indicated, the essence of petitioner's case on the merits was presented, and forcefully and fully, with an extensive discussion of the evidence on which it rested, *in the oral argument of petitioner's counsel at the hearing before the board.* Moreover, and this is of the utmost significance, each member of the board had been given, some months prior to this hearing, not only a résumé of the testimony before the trial committee, but also the full stenographic transcript of that evidence and all the exhibits. In the verified answer, it is explicitly and categorically asserted — and these statements stand undenied — that the board " examined petitioner's application, the proofs, testimony and exhibits, the reports of the Medical Board, and the report, findings and recommendation of the Trial Committee ", and that the board's determination denying the application " was [its] considered judgment * * * rendered in

good faith after full and careful consideration of the entire record ".[2]

In the face of this procedure and these sworn recitals, I do not understand, as I above observed, how it may be said, with any basis or warrant, that the board did not consider the evidence or that its members abdicated their decisional duty and simply rubber-stamped the determination previously made by the trial committee.

Once it appears that a transcript of the record containing the testimony and evidence adduced before the hearing officer had been submitted to the administrative agency making the determination, the question whether or not the latter actually considered the evidence and the contentions of the parties is normally not a matter for judicial scrutiny. (See, e.g., *Matter of Weekes* v. *O'Connell,* 304 N. Y. 259, 265; *Matter of Joyce* v. *Bruckman,* 257 App. Div. 795, 798; *United States* v. *Morgan,* 313 U. S. 409, 422; *Willapoint Oysters* v. *Ewing,* 174 F. 2d 676, 696, certiorari denied 338 U. S. 860; *National Labor Relations Bd.* v. *Jasper Chair Co.,* 138 F. 2d 756, certiorari denied 321 U. S. 777; *Norris & Hirschberg* v. *Securities & Exch. Comm.,* 163 F. 2d 689, 693.) The administrative action has " a quality resembling that of a judicial proceeding " (*Morgan* v. *United States,* 298 U. S. 468, 480), and it is " not the function of the court to probe the mental processes of the * * * [deciding officer] in reaching his conclusions " (*Morgan* v. *United States,* 304 U. S. 1, 18; see, also, *United States* v. *Morgan, supra,* 313 U. S. 409, 422). Accordingly, absent an express admission that the record has not been read (see *Matter of Joyce* v. *Bruckman, supra,* 257 App. Div. 795), it must be presumed that the evidence has been studied to the extent necessary to reach an informed and independent judgment. We recently said as much in the *Weekes* case (304 N. Y. 259, 265):

" we do not inquire into the degree of reliance placed by the members of the Authority upon such internal assistance; the extent to which independent study of the evidence in

2. Since there was no reply interposed by petitioner, the law seems settled that the question whether the board sufficiently considered the evidence was never properly raised or posited. (See, e.g., *Matter of Hines* v. *La Guardia,* 293 N. Y. 207, 215.) However, I disregard that obstacle — which might well be deemed insuperable — and consider the argument advanced by petitioner that the members of the board of estimate abdicated their duty of decision.

the record is necessary to the required exercise of informed judgment must be left to the wisdom and practical good sense of the commissioners themselves."

No extended argument or elaboration is necessary to establish that it would be destructive of administrative responsibility to require the deciding officer to take the stand and testify as to the extent to which he read the record, the degree of reliance he placed upon his associates' and subordinates' summaries and reports, and whether or not he read the briefs submitted to him by the parties. Where such an inquiry is sought by a party against whom a quasi-judicial determination has been made, the courts, as a matter of sound policy, will refuse to undertake it. (See *United States* v. *Morgan, supra,* 313 U. S. 409, 422; *Norris & Hirschberg* v. *Securities & Exch. Comm., supra,* 163 F. 2d 689, 693; *National Labor Relations Bd.* v. *Baldwin Locomotive Works,* 128 F. 2d 39.) Similarly, upon judicial review of administrative determinations, "where the Board declares that it has considered ' the entire record in the case,' it cannot be said that the Board did not consider the evidence, and we must accord its decision the presumption of regularity to which it is entitled ". (*National Labor Relations Bd.* v. *Jasper Chair Co., supra,* 138 F. 2d 756, 758, certiorari denied 321 U. S. 777.)

The two cases relied upon by the majority, *Matter of Daley* v. *Board of Estimate of City of N. Y.* (267 App. Div. 592), and *Matter of Weekes* v. *O'Connell* (*supra,* 304 N. Y. 259), do not derogate in any way from these principles, nor do they afford any support for what is now being decided. In neither of them did the administrative agency have before it a transcript of the evidence upon which its decision purportedly rested. In *Daley,* the court stated that " none of the sworn statements " supporting petitioner's claim " was placed before the Board of Estimate " (267 App. Div. 592, 597) ; indeed, it was explicitly noted, the medical board " withheld the facts upon which its recommendation was based ", setting forth only its conclusions, and the board of estimate " simply accepted those conclusions " (p. 598). And the procedure in the *Weekes* case was even more egregious: the order of the State Liquor Authority was made one hour after its hearing commissioner had concluded his hearings, was predicated on findings and conclusions identical with those of the subordinate officer and, concededly, was made

before any transcript or record of the evidence before him had been furnished the agency. In both cases, therefore, it was indisputable that the body charged with the duty of decision had done nothing but blindly follow the determination of its subordinate officer.

In point of fact, it is our decision in *Weekes*, resting as it does on the absence of a record before the deciding body, that most strongly points the error of appellant's position. We there wrote that " The mere availability of such a record tends to guarantee independent and informed appraisal of the proofs and of the contentions of the parties " (304 N. Y., at p. 266). And, beyond that, the court was careful to point out that, where a transcript of the evidence taken by the hearing officer was made available, " we do not inquire into the degree of reliance placed * * * upon such internal assistance ", for " the extent to which independent study " of the record is necessary " must be left to the wisdom and practical good sense of the commissioners themselves " (p. 265).

Even if we were to disregard the presumption of regularity, and even if we were to attach no weight to the sworn statement of the members of the board of estimate that they fully considered the record, an examination of what transpired at the hearing serves to afford still stronger basis for sustaining its action. The transcript of that hearing, covering 22 closely typewritten pages, demonstrates that every bit of important evidence was fully presented through the extensive oral arguments of their respective counsel. As must be manifest, where virtually everything embodied in the record before the trial committee has been presented orally to the deciding agency — and that was not the case in either *Weekes* or *Daley* — a petitioner may not be heard to claim that the agency failed to make an independent value judgment. (See *National Labor Relations Bd.* v. *Lane Cotton Mills Co.*, 108 F. 2d 568; cf. *Morgan* v. *United States, supra,* 304 U. S. 1, 18; *Owens* v. *Battenfield,* 33 F. 2d 753, certiorari denied 280 U. S. 605.)

Consequently, to rule that the board failed in its duty and merely espoused the conclusions of its committee, a court must presume, not only that the members of the board failed to examine the record, but also that they closed their ears to the oral presentation of the evidence and its analysis by counsel. Quite obviously, nothing of the sort occurred. The transcript

of the hearing reveals many searching questions posed by the board members, and the lively discussion by all present clearly evinces considerable familiarity with the case and its issues.

However, I go even further. Even if it were proper for us to " probe the mental processes " of the board and its members, the excerpts from the colloquy quoted in the majority opinion would furnish no warrant for the court's decision.

There is no claim that any one of the three officers, from whose remarks the opinion quotes (pp. 625–626), acknowledged or even intimated that he had failed to consider the transcript of the testimony taken before the trial committee. As a matter of fact, only one of the board members, the President of the Borough of Manhattan, had not examined the record, and he explicitly noted the fact, announcing that, since he would first like to examine it, " I will refrain from voting." His action is highly enlightening, for it indicates precisely how a responsible official would conduct himself had he not considered the record; and, I suggest, it is exactly what his associates would have done had they been in a position similar to his.

In no sense does the record indicate that any member of the board who voted on the petitioner's application neglected to exercise an informed and independent judgment. The three quoted excerpts are at best ambiguous and cannot be properly assessed unless considered in the context of the entire hearing. For example, as to the second item (*supra,* p. 626), it is plain that that official was merely seeking to point out, and correctly, that, insofar as a conflict in the testimony and the credibility of witnesses were concerned, the trial committee's appraisal and evaluation, entitled as they were to weight, should be preferred, and that, insofar as questions were posed involving the admissibility of evidence, it was better that they be passed upon, as questions of law, by the court.

In any event, insofar as any of the remarks quoted in the majority opinion appear to place undue reliance on the views of the trial committee or on subsequent court review, they merely reflect one side of a thorough and thoughtful interchange of views concerning the nature of the board's function and the scope of court review. Thus, the transcript reveals that counsel for both parties, as well as the board members, addressed themselves to the board's duty of independent decision at some length, with an extensive and illuminating analysis of the *Daley* case. The quotations represent only the more ineptly phrased or

ambiguous remarks that were made during the course of discussion, but these were fully counterbalanced by the statements accurately describing the board's duty, which must have corrected any erroneous impression that might have been created. For instance, the third of the quoted remarks (*supra,* p. 626) immediately called forth, from the President of the Borough of The Bronx, the observation,

"I might say on that * * * the fact * * * [that the trial committee has] heard the testimony does not in any way bind. After all, the responsibility to make the decision is with this Board * * *. The selection of and the appointment of a Trial Commission [*sic*] was a medium through which to lighten the work, to go into the facts, but by no means is it binding ".

From all the discussion there unquestionably emerged a fair and correct picture of the board's proper part and function. Under these circumstances, I would say, as did a federal Court of Appeals, " We have neither moral nor legal right to presume that only those who occupy judicial office respect their obligations and perform their official duties honestly, sincerely and conscientiously." (*Willapoint Oysters* v. *Ewing, supra,* 174 F. 2d 676, 696, certiorari denied 338 U. S. 860.)

Beyond all this, the court's present decision cannot help but have a tendency to discourage the kind of thoughtful inquiry and frank colloquy that here occurred, lest something be said in the course of discussion and debate that may be taken to indicate that the agency misunderstood its function or abdicated its duty.

In sum, then, since the evidence establishing that Kilgus had been intoxicated and that his death was caused by his own willful negligence was exceedingly strong, and since no justification exists for a ruling that the board of estimate rubber-stamped the trial committee's decision, its determination, unanimously affirmed by the Appellate Division, should be upheld.

DYE, FROESSEL and VAN VOORHIS, JJ., concur with CONWAY, Ch. J.; FULD, J., dissents in an opinion in which DESMOND, J., concurs; BURKE, J., taking no part.

Order reversed, etc.