[761 NYS2d 37]

In the Matter of KEVIN E. GALLAGHER, Individually and as President of the Uniformed Firefighters Association, Respondent, v CITY OF NEW YORK et al., Appellants.

First Department, June 12, 2003

## APPEARANCES OF COUNSEL

*Michael N. Block* of counsel, New York City (*Stephen C. Glasser* on the brief; *Sullivan Papain Block McGrath & Cannavo P.C.*, attorneys), for respondent.

*Drake A. Colley* of counsel (*Edward F.X. Hart* and *Leonard Koerner* on the brief; *Michael A. Cardozo, Corporation Counsel* of New York City, attorney), for appellants.

## OPINION OF THE COURT

SULLIVAN, J.

This appeal presents the issue of whether the decision to create a "promotional" list of candidates for appointment to the position of firefighter from the ranks of emergency medical technicians (EMTs) and paramedics employed in the Emergency Medical Service (EMS) Division of the Fire Department of the City of New York, which list would be exhausted before any candidates for the same position would be chosen from a list created by an open competitive examination, consisting of the same written examination given simultaneously, was arbitrary and capricious or in violation of the Merit and Fitness Clause of the New York State Constitution (art V, § 6).

On March 17, 1996, the EMS functions and personnel were transferred from the Emergency Medical Service Division of the New York City Health and Hospitals Corporation to the Fire Department, which thereafter assumed responsibility for the provision and coordination of pre-hospital emergency medical treatment and transport in New York City through its "911" system. Since the takeover, EMTs and paramedics staff the Fire Department ambulances that now provide pre-hospital emergency medical treatment and transport. EMTs provide basic life support (BLS), and the paramedics, more highly trained, provide advanced life support (ALS), which allows them to administer medications, intubate patients and provide other advanced care.

Consolidating emergency medical service functions into the Fire Department allowed the City to coordinate the efforts of

its EMS and firefighting personnel and reduce response time to life-threatening emergencies. Medical emergencies reported to the Fire Department dispatcher, via "911" or otherwise, are classified based on the information provided by the caller in accordance with medical classification protocols. If the call is one that is classified as life-threatening, as, for example, cardiac arrest, both a fire engine and ambulance will be dispatched to respond.

In 1998, the Department of Citywide Administrative Services (DCAS), the agency charged with the responsibility of implementing the merit system within the City of New York (Civil Service Law § 20), announced that it would accept applications for two civil service examinations for candidates seeking to become New York City firefighters. Because of the job overlap in the responsibilities between EMTs, paramedics and firefighters, DCAS had determined that Emergency Medical Service cadets, EMTs and paramedics were in a related line of promotion to firefighter and therefore offered them a promotional examination, No. 7514, for the position of firefighter. In order to be actually promoted, the candidate must have worked for the Fire Department for at least one year and have a minimum of a Certified First Responder Certification with Defibrillation (CFR-D). A CFR is a person trained to respond to a medical emergency for the purpose of controlling and stabilizing the situation until an EMT or paramedic can respond to provide BLS or ALS care. Certification is obtained from the New York State Department of Health (NYSDOH) after completion of a NYSDOH approved course and successful taking of examinations.

DCAS also offered an open competitive examination, No. 7029. To be selected, a candidate, by the date of appointment, needed 30 college credits or a high school diploma and two years of military experience. In addition, open competitive examination candidates were required to have, by the date of appointment, a minimum of a CFR-D certification.

As the record shows, the concept of holding an identical open competitive examination and promotional examination was in response to pressure exerted upon the Fire Department by the United States Department of Justice resulting from a perceived lack of minority representation within the firefighting force. The Fire Department's recruitment efforts in that regard had not proved successful.

The written portion of the two examinations, administered together on February 27, 1999, was the same in every respect

and was scored identically. Any candidate receiving a score of at least 84.705 was deemed to have passed and was invited to take the physical part of the examination, which was also identical as to both examinations. Candidates scoring 75 or more on the physical test were deemed to have passed. If a candidate passed the physical part of the examination, his or her combined written and physical score was inserted into a standard formula to reach a final score, which, for all those who passed the examinations, ranged from 70 to 100. The promotional list established contained 187 names.

In keeping with past practice, DCAS and the Fire Department determined to certify all the candidates on the promotional examination list for appointment as firefighters before certifying even a single candidate with a passing grade on the list established by open competitive examination.* As a result, candidates receiving a final score as low as 70 on the promotional list would be certified for appointment before any candidate who received a much higher final score on the open competitive examination. When petitioner, the President of the Uniformed Firefighters Association, initially voiced objections to the appointment scheme, he was assured that the Fire Department would preferentially appoint firefighters from the promotional list in rank order only down to those candidates with a score of 95 or above, the traditional approximate cutoff score for appointment to the position of firefighter from civil service lists. Thereafter, appointment would be made in rank order from a combined list of the promotional and open competitive examination candidates. Despite this assurance, DCAS subsequently announced that the promotional list was to be exhausted before any candidates from the open competitive list would be certified for appointment.

The instant CPLR article 78 challenge to this method of appointment was thereafter commenced on December 27, 2000 against DCAS, the Fire Department and the City of New York. At an earlier stage in the proceeding, a preliminary injunction was granted barring the appointment as a firefighter from the promotional list of any candidate who had scored lower than 95 on the civil service examination. In subsequently granting the petition, Supreme Court concluded that the use of a promotional list to give preferential appointments to the posi-

---

* As a consequence, the Fire Department would achieve greater diversity, since the promotional examination list would have a greater percentage of minority candidates among those achieving a passing grade than the list compiled from the open competitive examination.

tion of firefighter to candidates who served in the EMS Division of the Fire Department was arbitrary and capricious. In reaching this conclusion, the court rejected the argument that there was an overlap in responsibilities of EMS workers and firefighters. It thus determined that the position of firefighter was an entry level position in the Fire Department, thereby precluding the use of a promotional list, and directed that future appointments be made in rank order from a merged list encompassing both promotional and open competitive examination lists. We reverse.

"Appointments and promotions in the civil service of the state and all of the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive * * * " (NY Const, art V, § 6). The merit and fitness requirement was enacted to ensure that competence rather than personal and political influence determine civil service appointments (*see McGowan v Burstein*, 71 NY2d 729, 733 [1988]; *Hale v Worstell*, 185 NY 247, 251 [1906]). The Constitution's Merit and Fitness Clause, in conjunction with civil service legislation, is intended to improve the civil service by the appointment of employees of greater merit and ability (*see Matter of Altman v Lang*, 44 Misc 2d 751, 753 [1965], *affd* 23 AD2d 820 [1965], *affd* 17 NY2d 464 [1965]).

Petitioner's claim that respondents violated the Merit and Fitness Clause of the State Constitution is essentially a challenge to DCAS's determination to offer a promotional examination in addition to an open competitive examination for the position of firefighter. It should be noted that petitioner never challenged by an article 78 proceeding DCAS's decision to offer a promotional examination to EMS personnel for the position of firefighter. It was only after DCAS went back on its word and decided to exhaust the list of successful candidates on the promotional list before appointing any candidates from the open competitive list that petitioner brought this challenge. Thus, the decision to hold two examinations, one a promotional examination open only to EMS personnel, is beyond review for lack of a timely challenge.

In any event, it is a regular and well-established practice of DCAS, the agency charged with implementing the merit system within the City of New York, to certify candidates to the appointing agency from promotional eligible lists before certifying for appointment candidates from open competitive eligible lists

for the same position. Thus, DCAS must determine the requisite knowledge, skill and ability required for a given civil service position, assess the most appropriate way to measure a candidate's relevant attributes, and, if appropriate, administer and grade a test by which those qualifications may be judged. Due to the complex and highly technical nature of these functions, courts have accorded considerable deference to the agency's ability to assess to what extent, and in what manner, merit and fitness should be measured (*see McGowan v Burstein*, 71 NY2d 729, 733 [1988]; *Matter of Grossman v Rankin*, 43 NY2d 493 [1977]).

In *Grossman*, the Court of Appeals, in reviewing the challenge of candidates for assistant corporation counsel positions classified as not open to competitive examination, ruled:

> "[T]he focus of the court must be on whether 'the position is clearly one properly subject to competitive examination' and that where 'there is fair and reasonable ground for difference * * * the action of the commission should stand, even though the courts may differ from the commission as to the wisdom of the classification' (*People ex rel. Schau v McWilliams*, 185 NY 92, 99 * * * ). The question of classification is for the commission, and the court should not interfere with its judgment in situations where an argument can be made for either classification and the position is one for which there is a substantial variance of opinion (*see Matter of Simons v McGuire*, 204 NY 253, 258 [additional citations omitted])." (43 NY2d at 505-506; *see Matter of Wirzberger v Watson*, 305 NY 507, 513 [1953]; *Matter of Board of Educ. of Union Free School Dist. No. 1 v Spaulding*, 277 App Div 809 [1950], *affd* 303 NY 107 [1951].)

In the instant matter, although certainly opinions could differ, DCAS did not act arbitrarily or capriciously when it determined that the most appropriate way to fill vacancies for the position of firefighter was to offer both an open competitive examination and a promotional examination. In accordance with Civil Service Law § 52 (1), vacancies in positions in the competitive class are to be filled as far as practicable by "persons holding competitive class positions in a lower grade in the department in which the vacancy exists, provided that such lower grade positions are in direct line of promotion, as determined by the state civil service department or municipal

commission." Where, however, it is impracticable or against the public interest to limit eligibility to persons in a direct line of promotion, "such department or commission may extend eligibility for promotion to persons holding competitive class positions in lower grades which the department or commission determines to be in related or collateral lines of promotion" (*id.*).

Although the responsibilities of firefighters and those in the EMT and paramedic titles are not identical, the finding of the Fire Department and DCAS that there is a sufficient overlap of responsibilities to determine that the titles are related is rational. Firefighters may assist responding EMS personnel in lifting and carrying patients and otherwise providing general assistance to patients. The notices of examination for the position of firefighter, both for the open competitive examination and the promotional examination, state that firefighters, among other things, "assist in * * * providing pre-hospital emergency medical care" and "medical assistance to injured or ill citizens"—the primary responsibility of candidates already serving in the EMT and paramedic titles—as well as the control and extinguishment of fires, a duty not performed by EMT and paramedic personnel. In addition, the notices state that firefighters are required to obtain and maintain CFR-D certification. Fire apparatus are equipped with defibrillators.

Through their Fire Department employment, EMTs and paramedics acquire skills and ability in a variety of tasks that they would be expected to perform as firefighters. Like firefighters, they are trained in the use and operation of emergency vehicles and emergency communications equipment used by firefighters. In addition, EMTs and paramedics have experience with the incident command system, the process by which emergencies are divided into specific units for action by the appropriate agency, including those to which more than one City agency may respond. Both Fire Department EMS personnel and firefighting units operate as a quasi-military organization and are trained accordingly.

Petitioner, adopting Supreme Court's finding, argues that the overlap of responsibilities between the tasks performed by EMS personnel and firefighters is of "illusory significance." In so arguing, he highlights the seemingly inconsistent positions taken by the Fire Department here and in *Matter of Beloten v Diamond* (276 AD2d 438 [2000]), which involved the issue of whether the maximum age limitation applicable to the entry level position of firefighter should apply to those in EMS titles

seeking appointment through a promotional examination. In *Beloten*, the Fire Department submitted an affidavit observing that the "physically demanding responsibilities [of firefighters] are not required for the position of EMT and Paramedic. Persons in those positions do not acquire experience fighting fires. They are responsible for responding to calls for emergency medical assistance and providing pre-hospital medical care." Despite the inconsistency, we find, given the due deference to which DCAS is entitled and the limited scope of judicial review available to us (*see Matter of Kilgus v Board of Estimate*, 308 NY 620, 627 [1955]), that the determination of overlap in responsibility in the tasks performed by firefighters and EMS personnel passes the rationality, if not the consistency, test.

Furthermore, it is the purpose of a promotional examination to give preference to candidates in related titles or with related experience for a uniformed position. And, in those instances where an identical open competitive examination is given at the same time as a promotional examination, DCAS assembles a certified list of candidates from both lists for use by the hiring agency. DCAS historically includes the names of candidates from the promotional list before including names from the open competitive list, a practice based on DCAS's understanding that this reflects the intent of Civil Service Law and flows from the determination that eligibility to sit for a promotional examination denotes skills and experience that have enhanced the candidate's merit and fitness to warrant a preference over those who have not served in the eligible title. This policy has received judicial approbation (*see Matter of Ankner v Lang*, 33 Misc 2d 341, 343 [1962]; *Matter of Gunning v Altman*, 198 Misc 123 [1949]).

Moreover, as DCAS argues, since any candidate qualified to take the promotional examination would also have been eligible to take the open competitive examination, "[i]t would be futile and pointless to offer a promotional examination if the eligible list established from the promotional examination was not exhausted in accordance with Civil Service Law § 61 before any appointments were made from the eligible list established from the open competitive examination."

Petitioner argues that selecting candidates from the promotional list before selecting from the open competitive list results in the appointment of less qualified candidates. Each candidate appearing on the certified list, regardless of placement, is eligible for consideration for appointment by virtue of demonstrating, through a competitive examination, that he or she

possesses the requisite knowledge, skill and dexterity to learn and perform the duties of a firefighter. Nor does it follow that the candidate with a lower adjusted final average on the promotional examination appointed before the candidate with a higher adjusted final average on the open competitive examination is less qualified. Such an argument ignores the knowledge, training and experience, which is unquantifiable, that this candidate brings with the appointment.

It must also be recognized that the adjusted final average is a score made up of raw scores from the written and physical tests plus any additional credits to which the candidate is entitled, such as veteran's credits and City residence. Thus, the candidate's list position is not necessarily a precise reflection of how he or she performed on the examination relative to the other candidates on the test. For example, as the record shows, it is possible for a candidate, both a City resident and disabled veteran, who scored 85 on the written and physical tests, to be placed on the open competitive eligible list with an adjusted final average of 100. In contrast, a candidate on the promotional list, not a veteran, who scored 94 on the written and physical test, would be placed on the promotional eligible list with an adjusted final average of 94.

The Court of Appeals has held that, in considering merit and fitness, factors other than examination scores may be taken into account (*see Matter of Cassidy v Municipal Civ. Serv. Commn.*, 37 NY2d 526, 528-529 [1975] [one-of-three appointment rule provided for in Civil Service Law § 61 comports with merit and fitness requirement]; *McGowan v Burstein*, 71 NY2d at 735 [method of assigning a single grade to a range of raw scores consistent with merit and fitness requirement]).

Finally, it should be noted, passing the civil service examination is only the first step in becoming a firefighter. Once appointed from an eligible list, promotional or open competitive, candidates begin a probationary period and enter the Fire Academy, where they are given intensive instruction and are closely supervised. During the probationary period each candidate's ability to perform the duties of a firefighter is assessed. Regardless of their civil service examination score, and whether appointed from the promotional or open competitive list, those probationers who cannot successfully perform the functions of a firefighter or whose performance indicates that they would pose a threat to the safety of other firefighters are not appointed to the position.

Thus, we conclude that petitioner has failed to show that respondents acted arbitrarily or capriciously or that they

violated the Merit and Fitness Clause of the New York State Constitution.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Jane Solomon, J.), entered August 21, 2002, which, to the extent appealed from, as limited by the briefs, granted petitioner's article 78 petition to the extent of permanently enjoining the Fire Department of the City of New York from appointing firefighter candidates from other than a merged promotional/open competitive list, should be reversed, on the law, without costs or disbursements, the petition denied, the injunction vacated and the proceeding dismissed.

NARDELLI, J.P., FRIEDMAN, MARLOW and GONZALEZ, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered August 21, 2002, reversed, on the law, without costs or disbursements, the petition denied, the injunction vacated and the proceeding dismissed.