*782 OPINION OF THE COURT
Ute Wolff Lally, J.
Petitioner, Morris Ware, commenced this CPLR article 78 proceeding seeking a judgment: (1) declaring that the determination of the respondents, Board of Fire Commissioners of the Roosevelt Fire District, Roosevelt Fire District and Roosevelt Fire Department (collectively referred to herein as respondents), that the petitioner engaged in insubordination and gross misconduct was not based upon substantial evidence; (2) declaring that the determination of the respondents terminating him from membership in the Roosevelt Fire Department was an arbitrary and capricious abuse of discretion; (3) rescinding, nunc pro tunc, respondents’ suspension and termination of petitioner from membership in the Roosevelt Fire Department and restoring petitioner to the position and status that petitioner held prior to his suspension and termination; (4) compelling respondents to retroactively restore all benefits associated with petitioner’s former positions in the Roosevelt Fire Department and Roosevelt Fire District as a result of his illegal suspension and termination; and/or (5) directing respondents to provide petitioner with all demanded, but not provided, discovery and remanding this matter for another hearing based upon respondents’ failure to provide, or timely provide, petitioner with discovery that was essential to his defense of the charges levied against him.
Respondents oppose and submit that inasmuch as they have complied with all provisions of General Municipal Law § 209-/ pertaining to disciplinary proceedings against members of the volunteer fire service, and based upon the substantial and overwhelming evidence against the petitioner herein, there are no triable issues of fact pursuant to CPLR 7804 (h) and the proceeding before this court should be dismissed.
The application is disposed of as follows.
It is noted at the outset that pursuant to CPLR 7804 (e) a[t]he body or officer shall file with the answer a certified transcript of the record of the proceedings under consideration, unless such a transcript has already been filed with the clerk of the court.” In that regard, this court notes that the official record and exhibits of said hearing indicate the following:
Petitioner Ware is a former chief of the Roosevelt Fire Department (having served in that capacity over a four-year period), a former commissioner of the Roosevelt Fire District (having served in that capacity for 15 years), and a member of the Roos *783 evelt Fire Department for more than 30 years. He is also a qualified chauffeur for fire department vehicles including a fire engine/pumper truck (unit 731) and a mini pumper highway rescue truck (unit 732) at Hose & Engine Co. #1, Park Avenue, Roosevelt Firehouse (hereinafter referred to as the Roosevelt Firehouse).
At petitioner’s disciplinary hearings, infra, and in his affidavit submitted in opposition to the instant petition by firefighter Ware, the Chief of the Roosevelt Fire Department, Garland Moore, explained the procedure for handling an incoming emergency call. Specifically, Moore explained that according to general procedure, section 1 of the General and Standard Operating Procedures for the Roosevelt Fire Department, an apparatus, i.e., a fire truck, can respond to a fire call if it has the required number of personnel. Under section 7, when five firefighters are available, they can give a signal “21” and respond to the scene in the apparatus. The first firefighter to respond to the firehouse is then required to notify Nassau County Fire Communications (hereinafter Firecom) or the chief in charge directly and let him know how many members are available at the firehouse. Therefore, even if a firefighter is in the firehouse by him or herself, he or she is obligated to call Firecom to notify the chief that they are by themselves and request orders or call the chief directly for orders. If he or she notifies the chief of their availability, he or she can sign an emergency attendance sheet for that fire call even if they only responded to the firehouse and were ordered to stand by but never went to the actual location of the fire call.
On March 13, 2009, at approximately 3:00 p.m., a rescue/ emergency call reported persons trapped in a vehicle at Taylor Avenue in Roosevelt, New York. Petitioner Ware did not attend the call. He also failed to respond to the Roosevelt Firehouse and failed to advise Firecom or Assistant Chief Willie Nunn, the incident commander, that he was present and available to respond to the call with a second apparatus, unit 731. Nonetheless, sometime after March 13, 2009, Ware signed an attendance call sheet claiming length of service award (LOSAP) credit for attendance at said call.
Subsequently, on May 20, 2009, at approximately 2:09 p.m., Ware failed to attend a fire call at 34 Decatur Street. He also failed to respond to the Roosevelt Firehouse and advise Chief Garland Moore, the incident commander, that he was available to respond to the call with the fire apparatus or remain at the *784 firehouse until the fire apparatus returned. Yet again, sometime after May 20, 2009, petitioner Ware signed an attendance call sheet claiming LOSAP credit for attendance at said call that he did not attend or respond to.
The evidence at the petitioner’s disciplinary hearings, infra, also confirmed that on May 30, 2009, at approximately 3:00 p.m., petitioner Ware failed to attend yet another fire call, this time located less than 500 feet from his residence in Roosevelt, New York. He also failed to respond to the Roosevelt Firehouse, to advise Chief Willie Nunn as incident commander that he was available to respond to the call with another fire apparatus, or remain at the firehouse until the fire apparatus returned. Instead, petitioner was observed by Chief Willie Nunn to remain standing in front of his residence during the entire fire call. Yet, sometime after May 30, 2009, petitioner signed an attendance call sheet claiming LOSAP credit for attendance at said call that he did not attend or respond to.
On June 4, 2009, Chief Moore, called a meeting at the Roosevelt Firehouse. There, he explained to all members in attendance, including Ware, that firefighters who did not attend calls were prohibited from signing call attendance sheets and those who wrongfully signed call sheets would be suspended.
On July 6, 2009, between the hours of 3:30 p.m. and 4:40 p.m., there was a series of three emergency fire calls within a few minutes of each other all within the Roosevelt area. The first was an auto accident on the Southern State Parkway wherein two people were trapped in their vehicle, followed by an auto accident at Hudson and Pennsylvania Avenues in Roosevelt, and an automatic alarm at Miss Shelly’s Upward Prep School located at 66 Nassau Road in Roosevelt.
The only vehicle from the Roosevelt Firehouse to respond to the call to the Southern State Parkway was fire engine unit 733. Firefighters and emergency medical technicians from neighboring departments, including Uniondale and North Merrick, provided mutual aid to members of the Roosevelt Fire Department. Within 15 minutes, the second call came in for a vehicle overturned at Hudson Avenue. Three Roosevelt Fire Department vehicles, along with two Uniondale fire vehicles, and one from Merrick responded to this call. Three to five minutes later, a third call came in for an automatic fire alarm at 66 Nassau Road. Since Chief Moore, who coordinated the response to the Southern State Parkway and Nassau Road calls, was not informed that any other Roosevelt Fire Department *785 vehicles, specifically units 731 and 732, were available to respond to the 66 Nassau Road call as well as the first call, Moore also asked that the South Hempstead Fire Department stand by for additional fire calls that might come in at Roosevelt Fire Department Headquarters.
Subsequently, sometime after July 6, 2009, despite not having attended or otherwise responded to any of the three July 6th emergency calls, petitioner Ware signed three attendance call sheets claiming LOSAP credit.
In his affidavit submitted in opposition to the instant petition by Morris Ware, Chief Moore also explained the procedure for placing any letters in the fire department apparatus. Specifically, Chief Moore explained the procedure for placing letters in fire department vehicles is to first send a letter requesting permission to do so to the Chiefs office who then forwards the request to the Fire Commissioners for review and approval of said documents to be disseminated in the vehicles.
On August 31, 2009, a package of documents including a letter to the Board of Fire Commissioners from petitioner Ware dated August 6, 2009 directing criticism at the Chiefs office with attachment of four other disciplinary letters regarding charges of insubordination from the Chiefs office, were found in apparatus units 731, 735, 7361 ambulance and 734 class A pumper vehicle all of which were housed and located at the Roosevelt Firehouse. After conducting an investigation into the source of the letters, Chief Moore ascertained that firefighter Derrick Wyche physically placed the documents in the apparatus at the direction of petitioner Ware. In fact, Ware never denied that he had solicited firefighter Derrick Wyche to place the unauthorized package of letters in the fire department apparatus.
As a result of petitioner’s actions including his failure to respond to emergency calls and misuse of the fire department’s “call sheets,” on or about September 10, 2009, Chief Garland Moore, filed charges against Morris Ware for violation of articles IX and XVII of the department bylaws and various sections of the department’s General and Standard Operating Procedures. According to Chief Moore, petitioner’s actions constituted neglect of duty, insubordination, gross misconduct including causing discord among the members and threatening the efficiency of the fire department.
Specifically, the charges levied against the petitioner were as follows:
*786 “Violation of Roosevelt Fire Department of the Roosevelt Fire District By-Laws, Standard Operating Procedures Engine Crew Riding and General Rules & Regulations “1. Article IX, Section 3
“ ‘The Chief shall hold the officers and members of the Department to strictly account for the neglect of duty and file charges against any member or officer at any time for refusing [to] obey orders, or for insubordination, or for any reason that would create discord or decrease efficiency in the Department.’
“2. Article XVII Section 2 Obligation “ T, (name of candidate), elected a member of the Fire Department of the Roosevelt Fire District, do hereby, in the presence of these officers and members of the Department do solemnly, and of my own free will and accord, promise to abide by and obey the orders and regulations of the Fire Department, of the company or squad to I have been assigned, and of the Board of Fire Commissioners. I will attend all fires, emergencies and company meetings when possible, and in all ways assist my superior officers in the discharge of their duties. I promise to obey all orders issued by the officers thereof any purpose whatsoever and in every way perform my duties.’
“3. Article XVII, Section 4
“ ‘Members shall at all times abide by the by-laws of the fire department of the Department of the Roosevelt Fire District.’
“4. General Procedures Section 1 “ ‘All persons not responding to an alarm on the apparatus will remain in quarters until released by the Officer in Charge of the call. Each station will notify the dispatcher at H.Q. (or Firecom) by land line as to the amount of personnel available. The dispatcher may then notify the officer in charge, if deemed necessary, as to the situation.’
“5. Roosevelt Fire District Standard Operating Procedure: E0001
Engine Crew Riding Assignments — Response Procedure
“Page 13-Section 1
“ ‘The first firefighter to enter the firehouse will go *787 immediately to the telephone and Dial #5951 to contact FIRECOM. The firefighter will then write the location of the alarm on the blackboard near the telephone. DO NOT OPEN THE BAY DOOR OR START ANY APPARATUS UNTIL THIS IS COMPLETE!!’
“Page 14-Section 7
“ ‘The apparatus should wait approximately 1 minute for each missing crew members up to 5 firefighters. However, no engine will respond with less than 3 firefighters on board unless so ordered by the Incident Commander. The OFFICER will communicate a short crew status to the Incident Commander prior to responding.’ ”
By a decision and order dated September 8, 2010 by the Board of Fire Commissioners of the Roosevelt Fire District, respondents terminated the service of petitioner as a firefighter of the Roosevelt Fire Department and expelled him from the rolls in accordance with the bylaws and General and Standard Operating Procedures of the Roosevelt Fire Department.
In bringing this petition pursuant to CPLR 7803 (3), Ware argues that the record lacks substantial evidence to support the decision that he engaged in insubordination and gross misconduct. Further, he submits that given his long-standing service and the singularity with which he was prosecuted by the respondents, the termination of his service as a firefighter shocks one’s sense of fairness. Petitioner also submits that he was deprived of due process because the respondents failed to provide petitioner with copies of many items of evidence that respondents introduced into evidence at the disciplinary hearings. It is petitioner’s position that he was suspended based on allegations and charges that he flatly denies and that he is “being singled out and having [his] rights violated as a result of [his] having questioned the procedures employed relative to voting in the most recent department elections and the special election scheduled to fill the vacant assistant chief position.”
Firefighting units operate as a quasi-military organization and are trained accordingly (Matter of Gallagher v City of New York, 307 AD2d 76 [2003]). As with any quasi-military organization, the fire service demands strict discipline (Matter of Hickey v Bratton, 180 AD2d 682 [1992]). As a result, this court will accord great deference to its determinations regarding the internal discipline of its members (id.).
*788 “In the judicial review of matters affecting public employees, ‘respect and weight are to be accorded the determination made by the agency charged with responsibility for fixing the penalty or discipline because of the special capability, competence and experience of that agency and in consequence of the confidence in it implicit in the legislative grant of authority and responsibility to it’ ” (Matter of Perez v City of N.Y. Civ. Serv. Commn., 140 AD2d 224, 225 [1988], quoting Matter of Ahsaf v Nyquist, 37 NY2d 182, 184 [1975]).
As in the case of the police force, in matters concerning the discipline of firefighters, “great leeway” must be accorded to the fire commissioner’s determinations concerning the appropriate punishment, for it is the commissioner, not the courts, who “is accountable to the public for the integrity of the Department” (Matter of Kelly v Safir, 96 NY2d 32, 38 [2001]; Trotta v Ward, 77 NY2d 827, 828 [1991]; Matter of Berenhaus v Ward, 70 NY2d 436, 445 [1987]). Thus, this court will not strike down a penalty simply as being too harsh unless the penalty can be considered an abuse of discretion (Matter of Billings v County of St. Lawrence, 139 AD2d 809 [1988]). The standard of review for a penalty imposed is whether, under the circumstances, the penalty imposed was so disproportionate to the offense as to be shocking to one’s sense of fairness or shocks the judicial conscience (Kelly v Safir, supra; Matter of Vazquez v Kelly, 48 AD3d 285 [2008]).
In this case however, petitioner’s application for relief is predicated upon CPLR 7803 (3). The questions that subdivision (3) lists as permissible in an article 78 proceeding are: “whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed.” Yet, the “substantial evidence” test of subdivision (4), rather than the “arbitrary and capricious” test, applies when the determination is required to be based on a full evidentiary hearing as in this case. That is, inasmuch as petitioner’s disciplinary hearing was required by General Municipal Law § 209-Z and inasmuch as the determination to be reviewed herein was made after a hearing held pursuant to direction of law at which evidence was taken, the question before this court is whether the respondents’ determination is subject to “substantial evidence” review. The “substantial evidence” test of subdivision (4) is further elaborated upon in CPLR 7804 (g) which provides as follows:
*789 “Where the substantial evidence issue specified in question four of section 7803 is not raised, the court in which the proceeding is commenced shall itself dispose of the issues in the proceeding. Where such an issue is raised, the court shall first dispose of such other objections as could terminate the proceeding, including but not limited to lack of jurisdiction, statute of limitations and res judicata, without reaching the substantial evidence issue. If the determination of the other objections does not terminate the proceeding, the court shall make an order directing that it be transferred for disposition to a term of the appellate division held within the judicial department embracing the county in which the proceeding was commenced. When the proceeding comes before it, whether by appeal or transfer, the appellate division shall dispose of all issues in the proceeding, or, if the papers are insufficient, it may remit the proceeding.”
Since the petitioner raises the question of whether the challenged determination is supported by substantial evidence, and since no objection has been raised that could have terminated the entire proceeding within the meaning of CPLR 7804 (g), this court is obligated to transfer this proceeding to the Appellate Division (Matter of Bush v Mulligan, 57 AD3d 772 [2008]; Matter of Dallas v Doar, 45 AD3d 592 [2007]; Matter of Royster v Goord, 26 AD3d 503 [2006]).
The clerk of the court is hereby directed to forthwith transmit all papers and records in this proceeding to the Clerk of the Appellate Division, Second Judicial Department.
Given the foregoing, the court need not address petitioner’s other arguments.