Fuld, J.
We are here concerned with the determination of the Board of Appeals of the Village of Scarsdale granting a variance permitting the residence portion of a much larger tract to be used as a parking lot in connection with a super market to be constructed on the adjacent business use portion. The property is, as the facts already told indicate, in a residence district on the edge of the district zoned for business.
In 1954, Heath-York Corporation, the intervenor herein, purchased the property involved; it covers 36,000 square feet, 10,000 square feet being located in the area zoned for residence and the balance of 26,000 square feet in the business district. The portion zoned for residence, fronting on Secor Road, *192 consists of a narrow strip, almost triangular in shape, which has a maximum depth of about 75 feet.
To the east is the area zoned for residential uses, but on every other side are parcels put to purely business uses — gasoline stations, public parking areas, a restaurant and retail shops, including a grocery and meat store, a tailor, a liquor shop, a laundry, a delicatessen and a bank. On its property, Heath-York proposes to construct a super market and in November of 1954 applied to Scarsdale’s Board of Appeals for a variance which would allow it to use the parcel in the residence zone for part of the building and for an off-street parking lot. The village had earlier in the year modified its zoning ordinance so as to require a developer of any property for business use to provide for off-street parking.
The zoning ordinance authorized the Board of Appeals to “ Permit the extension of a use or structure into a more restricted district immediately adjacent thereto ” subject to appropriate conditions and safeguards, when it determines, after public notice and hearing, that the variance may be granted in harmony with the general purposes and intent of the ordinance (§ 154, subd. [h]). A public hearing was held and full opportunity to be heard given to all who appeared. The petitioners, who are owners of nearby parcels, appeared in person and by counsel and presented their objections and arguments. No testimony was taken at the hearing, only speeches were delivered and argument heard, and Heath-York offered alternative site plans. After the public hearing, action was deferred for study by the board and, during that period, Heath-York filed a revised site plan showing a smaller building and a different parking space arrangement.
Decision was made, following full discussion, at an adjourned hearing on April 1, 1955, at which time the board made certain findings of facts and adopted by roll call vote a resolution granting the application in part, subject to conditions, and denying the balance of the application. In short, it authorized the use of the residence portion of the property solely for off-street parking purposes, subject to specific requirements as to paving and maintenance of the parking area and subject to the maintenance of planting and screening, of a type approved by the Village Planning Commission, on such portion as the commission might designate. The resolution expressly pro *193 Mbited the use of any part of the residence property for any business structure and prohibited any entrance or exit from the parking area across such residence property.
The board consists of five members; three members constitute a quorum and a vote of a majority is required for the granting of a variance (Village Law, § 179-b). On April 1, 1955, when the board granted the variance in this case, three members were present and the vote was unanimous. One of them, an attorney named Sherwood E. Silliman, had not been present at the public hearing. However, as a resident of the village for 25 years, a member of its Board of Appeals for some 12 years and a long-time village trustee, he was familiar with the neighborhood and its zoning problems; moreover, before voting at the meeting, he had “ thoroughly ” discussed the arguments presented at the public hearing. On April 4, 1955, the board’s term expired and on April 20, the new board formally approved the minutes of the April 1 meeting.
The petitioners, disagreeing with the board’s determination and claiming that it acted ‘ ‘ illegally ’ ’ and ‘1 improperly, ’ ’ brought this proceeding to review the decision. The case was transferred to the Appellate Division and that court referred the issues raised to an official referee. After taking extensive testimony, the referee reported, contrary to petitioners’ allegations, that the board ‘ ‘ made * * * findings of fact * * * in connection with its determination ” and that the minutes reporting the findings constituted “ a reasonably accurate transcript of the proceedings ”. He further reported that, although absent from the public hearing and not having read the transcript of that hearing, board member Silliman had “ The transcript * * * available to him,” “was familiar with the arguments made at the hearing ” and “ discussed it thoroughly ’ ’. The court — Nolan, P. J., dissenting on one issue, namely, the power of a board member to vote if not present at the public hearing — affirmed the action of the board.
Although the petitioners argue many points, and we have considered them all, only that on which the Presiding Justice predicated his dissent deserves discussion.
Courts, we have said, will not “ ‘ probe the mental processes ’ ” of the members of an administrative tribunal. (Matter of Kilgus v. Board of Estimate of City of N. Y., 308 N. Y, *194 620, 628; Matter of Weekes v. O’Connell, 304 N. Y. 259, 265; see, also, Morgan v. United States, 304 U. S. 1, 18.) Absent a showing, “ clearly reveal[ed],” that “they made no independent appraisal and reached no independent conclusion ” (Matter of Kilgus v. Board of Estimate of City of N. Y., supra, 308 N. Y. 620, 628), we will not disturb the decision. As we wrote in the WeeJces case, “ the extent to which independent study of the evidence in the record is necessary to the required exercise of informed judgment must be left to the wisdom and practical good sense of the commissioners themselves ” (304 N. Y. 259, 265). It is enough if the administrators seek to make and have the means to make an informed decision, one that is based on knowledge sufficient for ‘ ‘ wise and proper judgment.” (Cf. Matter of Joyce v. Bruckman, 257 App. Div. 795, 798.)
That such was the case here plainly appears. Silliman not only had the means of making an informed decision, but, the record demonstrates, he actually had full knowledge of the problems presented by the request for a variance — and that clearly included the matters aired at the public hearing. It is also clear that Silliman considered those matters before casting his vote. In this regard, the board, the official referee and the Appellate Division were unanimous and the findings made are amply supported by the evidence. As already noted, the record reveals that Silliman, an attorney, had lived in Scars-dale for a quarter of a century and had served as a trustee of the village and as a member of the Board of Appeals for many years. Confirming the recital in the minutes of the board that there was ‘ ‘ full discussion of the testimony presented * * * at [the public] hearing”, Silliman himself testified that he ‘ ‘ was thoroughly familiar with the argument made at the hearing” and the referee, in addition to explicitly so finding, affirmed that 11 he discussed [the matter] thoroughly ” before voting.
Appellants’ position amounts, therefore, to nothing more than an assertion that, regardless of the fact that Silliman had access to and actual knowledge of the facts and issues in the case, he was not qualified to vote because he was not present at the public hearing and did not read a transcript of the record made at that hearing. Such is not the law. Neither reason nor logic supports so mechanical a rule and, bearing *195 that out, none of the cases cited by appellants so hold or suggest. On the contrary, the emphasis has always been upon whether the administrative body had the opportunity to make an “informed” decision (Matter of Weekes v. O’Connell, supra, 304 N. Y. 259, 265; Matter of Joyce v. Bruckman, supra, 257 App. Div. 795, 797-798), and, in the absence of a “ clear ” revelation that the administrative body ‘ ‘ made no independent appraisal and reached no independent conclusion ”, its decision will not be disturbed. (Cf. Matter of Kilgus v. Board of Estimate of City of N. Y., supra, 308 N. Y. 620, 628.) And, in ascertaining whether an ‘ ‘ informed ’ ’ decision has been made, the courts accord the decision the presumption of regularity to which it is entitled (see National Labor Relations Bd. v. Jasper Chair Co., 138 F. 2d 756, 758, cert. denied 321 U. S. 777) and refrain from probing “ ‘ the mental processes of the * * * [deciding officer] in reaching his conclusions ’ ”. (Matter of Kilgus v. Board of Estimate of City of N. Y., supra, 308 N. Y. 620, 628; Matter of Weekes v. O’Connell, supra, 304 N. Y. 259, 265; Morgan v. United States, supra, 304 U. S. 1, 18.)
In no case have we adopted the view suggested by appellants and analysis of the cases in which we have upset an administrative decision clearly demonstrates that this case is far different. In the Weekes case (supra, 304 N. Y. 259), for instance, the order of the State Liquor Authority, which we reversed, was made one hour after the hearing commissioner had concluded his hearings, before transcription of the record, and differed not one whit from the conclusions of that subordinate officer. And, in the Kilgus case (supra, 308 N. Y. 620), we reversed a decision of the Board of Estimate of the City of New York because, and solely because, a majority of the board membership had made statements which, the court concluded, “ clearly reveal[ed] that they made no independent appraisal and reached no independent conclusion” (p. 628). In both cases, then, contrary to the situation here, the court found it indisputable that, in violation of both statute and rule, the agency charged with the duty of decision had done nothing but blindly follow the determination of a subordinate officer. Here, on the other hand, there is presented a decision by a board, each member of Avhich had full access to all information necessary for an informed decision and in which none of the members operated under a misapprehension as to his duty to *196 make such a decision. Under such circumstances, no warrant or basis exists for finding the vote of member Silliman objectionable or for upsetting the determination of the board.
The order appealed from should be affirmed, with costs.
Conway, Ch. J., Desmond, Dye, Froessel, Van Voorhis and Burke, JJ., concur.
Order affirmed.