## H. ALLEN et al.
### v.
## The ZONING COMMISSION OF the DISTRICT OF COLUMBIA, et al., Appellants.
### No. 24351.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 10, 1970.

Decided July 9, 1971.

Petition for Rehearing Denied Nov. 23, 1971.

Mr. Leo N. Gorman, Asst. Corporation Counsel for the District of Columbia, with whom Mr. Hubert B. Pair, Acting Corporation Counsel at the time the brief was filed, and Mr. Richard W. Barton, Asst. Corporation Counsel, were on the brief, for appellants. Mr. C. Francis Murphy, Acting Corporation Counsel, also entered an appearance for appellants.

Mr. William H. Greer, Jr., Washington, D. C., for appellees.

Before MacKINNON and WILKEY, Circuit Judges, and GORDON,* U. S. District Judge for the Eastern District of Wisconsin.

MacKINNON, Circuit Judge:

Appellees sue the Zoning Commission of the District of Columbia to compel restoration of single family detached residential zoning to a four lot area, covering 53% of one acre, fronting on Wisconsin Avenue across from the Mt. Alto tract. Six months after a hearing the five members of the Commission voted 3 to 2 to rezone the area to permit "all types of residential development * * * of * * * medium high density * *." (Zoning Regulations § 3105.1.) It is alleged that this would permit 90-foot high rise apartments in an area otherwise occupied by single family detached homes. The complainants are owners of single family detached dwellings in the adjoining area and they attack the regularity of the public hearing and

---

* Sitting by designation pursuant to 28 U.S.C. § 292(c): (1964).

of the vote which followed it. D.C. Code § 11–521 (1967) conferred original jurisdiction of the suit upon the District Court and our jurisdiction of the appeal rests on D.C.Code § 11–321(a) (1967) (77 Stat. 479).

The Zoning Advisory Council originally recommended against the proposed rezoning. The public hearing to hear the protests against the rezoning was held on March 1, 1967 and substantial neighborhood opposition to the rezoning was expressed at that time.

On the date of the hearing the Zoning Commission of the District of Columbia consisted of five members, namely, three Commissioners of the District of Columbia, the Director of the National Park Service and the Architect of the Capitol (D.C.Code § 5–412 (1967)). Of the five members of the Commission only two (Commissioners Mathe and Tobriner) attended the public hearing. Later, on September 26, 1967, the entire Zoning Commission, with the votes of three members who had *not* attended the public hearing, as the last act of that body before the change of the D.C. government to the mayor-council system, voted 3 to 2 to grant the application and rezone the four lots. The two Commissioners who had attended the hearing voted against rezoning and the three members who had not attended the meeting voted to change the zoning.[1] This litigation followed in which appellees contended they were denied their right to a fair hearing. We agree.

The threshold issue is whether the hearing itself complied with the statutory requirements, for the Commission owes its existence to the statute and cannot act validly except in full compliance with its provisions. The statute created a five-man body (D.C.Code § 5–412 (1967)) and provided:

> Any amendment of the regulations * * * or of the [zoning] maps * * shall require the favorable vote of not

less than a full majority of the members of the commission.

D.C.Code § 5–416 (1967).

> Before putting into effect any amendment * * * of said regulations, or of said map * * * *the Zoning Commission shall hold a public hearing thereon.*

D.C.Code § 5–415 (1967) (emphasis added).

Detailed advance public notice of such hearing was required as follows:

> At least thirty days' notice of the time and place of such hearings shall be published at least once in a daily newspaper or newspapers of general circulation in the District of Columbia. Such published notice shall include a general summary of the proposed amendment or amendments of the regulation or regulations and the boundaries of the territory or territories included in the amendment or amendments of the map or maps, and the time and place of the hearing. The Zoning Commission shall give such additional notice of such hearing as it shall deem feasible and practicable. At such hearing it shall afford any person present a reasonable opportunity to be heard. Such public hearing may be adjourned from time to time and if the time and place of the adjourned meeting be publicly announced when the adjournment is had, no further notice of such adjourned meeting need be published.

D.C.Code § 5–415 (1967).

It is significant that Congress specifically provided that "it [the Zoning Commission] shall afford any person present *a reasonable opportunity to be heard.*" (Emphasis added.)

These provisions of the statute indicate that Congress placed great importance upon the public hearing by the Commission in the scheme it outlined for amending zoning regulations. It did so

---

1. When the trial judge heard that the two Commissioners who attended the hearing voted against rezoning and that the three *absent Commissioners* voted to re- zone, he remarked, "That is the funniest thing I have ever heard of. I will refer it back for a new hearing."

by requiring: (1) that the hearing be public; (2) that at least thirty days' notice be given of the time and place of the hearing; (3) that the notice be published in a daily newspaper in the District; (4) that the notice set forth a general summary of the proposed amendment and the boundaries of the territory included in the amendment; and (5) that *any* person present at the hearing have a *reasonable opportunity to be heard*. (6) Adjournments of the hearing were also to be publicly announced. In addition, Congress required not less than three favorable votes of the entire membership of the Commission to carry an amendment to the zoning map or regulations. These requirements indicate that Congress intended to safeguard the interests of persons affected by contemplated changes in zoning and the solicitude the statute bespeaks in assuring that interested parties will have ample notice of the hearing is not to be negated by presuming Congress would allow a quorum of the Commission to absent themselves therefrom.

When all these statutory requirements are considered together we conclude it indicates an intent by Congress thereby to require three members of the Commission (a quorum thereof) to attend the public hearing. Certainly the requirement that the "Zoning Commission shall hold a public hearing thereon" is not open to the interpretation that any number less than a quorum of the Commission can satisfy the statutory mandate. Also supporting this conclusion is the statutory requirement of three votes for any change in zoning. If less than a quorum were held to meet the statutory requirement, how many less? Would one Commissioner be sufficient? Or could a *"Commission"* hearing be held without any commissioner present? Can the Commissioner's assistant substitute for him under the framework of this statute? We think not. If such result is desired it requires a change in the statute.

■ The statute requires that a *reasonable opportunity to be heard* by the Commission be afforded and that contemplates that some Commissioners will be there to see the interested parties, to hear their arguments, to note their numbers and perchance to cross examine them, their counsel and their representatives. There is nothing in the language of the statute, or in the general law applicable to meetings of multi-member governmental bodies, that would require more than a quorum thereof to be present in order to constitute a meeting of the Commission but considering the obvious importance that Congress placed upon the public hearing, as indicated by the statutory safeguards it provided to guarantee the trappings of fairness, we are in no doubt that Congress intended to require a quorum of the Commission to be present at the required public hearing and not to permit a quorum to substitute their reading of the record for their personal appearance. We thus hold, as a matter of statutory interpretation, that the statutory requirement for a "reasonable opportunity to be heard" involving a matter that requires a minimum of three votes was not met by the hearing which was held without a quorum of the Commissioners being present.

Our decision in this respect follows the rationale of Clark v. County Board of Appeals, 235 Md. 320, 201 A.2d 499 (1964), where the Montgomery County Board of Appeals granted a special exception from the zoning regulations for a beauty shop. The applicable statute required three (out of the five) members to concur in order to constitute board action and that the "board * * * hold a public hearing thereon." However, only two members attended the hearing and a third concurred after "reading the transcript and looking at the exhibits." The other members did not participate in the hearing. On such facts the court interpreted the language of the ordinance requiring three members to concur in the decision to mean that three members, enough to constitute a quorum, had to be present at the required hearing. Other decisions in accord are Perkins v. School Committee, 315 Mass. 47, 51 N.E.2d 978 (1943);

Farrell v. Mayor of Revere, 306 Mass. 221, 27 N.E.2d 724 (1940); Sesnovich v. Board of Appeal, 313 Mass. 393, 47 N.E.2d 943 (1943); Hawkins v. Common Council, 192 Mich. 276, 158 N.W. 953 (1916). Contra, Taub v. Pirnie, 3 N.Y.2d 188, 165 N.Y.S.2d 1, 144 N.E.2d 3 (1957). *See* 42 Minn.L.Rev. 292 (1957); Annot., 18 A.L.R.2d 606 (1951). We consider that Younkin v. Boltz, 241 Md. 339, 216 A.2d 714 (1966); and Hyson v. Montgomery County Council, 242 Md. 55, 217 A.2d 578 (1966) are distinguishable on their facts since in both those cases a quorum of the commissioners were actually present at all hearings. In Colorado State Board of Nurse Examiners v. Hohu, 129 Colo. 195, 268 P.2d 401 (1954) it was held that permitting two board members who had not attended the hearing to vote for revocation was a denial of due process but there were elements of evidence in the hearing which involved credibility and demeanor of the witnesses.[2]

Appellants point out that it is permissible with the federal agencies for board members who do not attend hearings to read the transcript and vote on the matter, and suggest that they should be allowed similar latitude. The short answer to such contention is that the Zoning Commission of the District of Columbia is not a federal agency; it is a local municipal agency. Likewise the zoning regulations are local laws and not United States statutes.

There is also a wide variance in the types of hearings required by the respective statutes. The zoning law contem-

plates situations that directly affect the interests of local property owners, singly and en masse, and a type of hearing that frequently involves (such as here) direct participation by the property owners themselves in local citizen protest-type appearances to demonstrate community sentiment. Such hearings could be characterized as being of the grass roots type. One of their features is that they provide for a face-to-face encounter between the official who is to decide and the citizens whose rights are to be determined.

On the other hand, hearings in the federal agencies are more formal. They are usually fully transcribed and reported, involve the presentation of evidence in judicial type proceedings by counsel, and other representatives of the interested parties, who are in a large number of cases frequently corporations who in turn represent many thousands of shareholders. There are of course many federal hearings in which the individuals involved directly participate but their issues, formality, recording procedures, and the degree to which the interested parties are represented completely by counsel, distinguish them generally from the local grass roots-direct confrontation hearings.

■ The conduct of federal hearings is also regulated in minute fashion by the Administrative Procedure Act and by specific regulations duly promulgated by the agency involved which recognize and permit such practices. No similar statute applied here at the time the instant hearing was conducted.[3] Because of

2. The decision by a three-judge court in Empire Trails, Inc. v. United States, 53 F.Supp. 373 (D.D.C.1942) does not conflict with our decision here. *Empire Trails* involved a hearing before an Interstate Commerce Commission examiner where none of the three Board members attended the first hearing and only one Board member was present at the second hearing. At the first hearing, however, the parties stated there was no objection to the taking of testimony and they also consented to the second hearing. In addition, the court assumed from the record that the Commission acted inde-

pendently of the Board's recommendation and sustained the decision of the Commission. However, as is discussed below, hearings before the Zoning Commission are not precisely analogous to hearings held before the ICC or other federal agencies.

3. Effective October 21, 1969, some two years after the instant hearing was held, an administrative procedure act became applicable to the District of Columbia. D.C.Code §§ 1–1501 to 1510 (Supp. IV, 1971). It apparently covers the Zoning Commission, *id.* §§ 1–1502(4), (5), and

these differing features we thus see no rational basis to justify holding that this grass roots type local hearing on a proposed zoning change involving 53% of an acre bears sufficient statutory or factual similarity to hearings before the large federal agencies that a quorum of the decision makers should be permitted to absent themselves from the statutorily required hearing and act on the basis of staff work and a reading of the transcript.

It should also be noted that a show of hands of those objecting to the rezoning was called for at the hearing but no count was taken thereof and hence their number was not recorded in the Transcript. Thus, those Commissioners who may have read the record were not apprised thereby of the full measure of citizen opposition to the proposed rezoning.

There is no doubt that an absent officer is not ordinarily as well qualified to evaluate the evidence produced at a public hearing of the grass roots type as one who is present throughout. Since the issue here was heard by two Commissioners, and decided by three Commissioners who did not hear, we have grave doubts that an informed and independent decision was reached. The duty of attendance at public hearings as imposed by

a Zoning Commission hearing appears to come within the Act's definition of a "contested case." *Id.* § 1–1502(8), § 5–415. *See also* S.Rep.No.1581, 90th Cong., 2d Sess. 4 (1968) ; H.R.Rep.No.202, 90th Cong., 1st Sess. 2–3 (1967). Whether, and to what extent, the Act, and particularly D.C.Code § 1–1509(d), modifies prior law was a question neither briefed nor discussed by the parties at oral argument. Consequently our decision here reflects only our interpretation of the law in effect at the time of the hearing, *i. e.*, the zoning law unaided by the Administrative Procedure Act.

4. Six months before this case was argued on appeal, a motions panel of this court in Massachusetts Ave. Heights Citizens Ass'n v. Embassy Corp., 139 U.S.App. D.C. 355, 433 F.2d 513 (1970), upheld a denial by the District Court of a motion for preliminary injunction. At that time the construction of the building on the rezoned premises was already in progress to such extent that the court found that the builder would suffer a substan-

the statute upon the members of the Zoning Commission is substantial, but those citizens whose interests are affected thereby have a right to insist that it be performed in conformance with the statute and other applicable law. If this burden becomes too onerous, relief should be requested from Congress.

We accordingly affirm the judgment of the District Court.[4]

Judgment accordingly.

tial financial hardship if he were enjoined. With the construction being under way, the motions panel recognized that the losing party, whoever he might be, would be certain to suffer substantial damage. The court then decided the case on what appeared to it to be the likelihood that appellants would succeed on the merits in this case. That advance appraisal has now proved to be inaccurate.

To the extent that the decision in *Massachusetts Avenue, supra,* might have encouraged the builder to proceed with construction, he should have taken cognizance of the fact that appellants in this case were only asking that the case be remanded to the District Court for complete findings on all material issues, some of which they admit are critical to the rezoning. They were not asking for a decision of this court that would finally terminate the proceedings in their favor. Thus, even if appellants had prevailed on the merits in this case, there was no assurance that the zoning would eventually be upheld.