**William GARDNER, et al.**

v.

**CUMBERLAND TOWN COUNCIL et al.**

No. 2001–290–M.P.

Supreme Court of Rhode Island.

June 30, 2003.

Thomas Hefner, Esq., Scott Partington, Esq., Richard Kirby, Esq., Cumberland, for Plaintiff.

Mortimer Newton, Esq., for Defendant.

Present: WILLIAMS, C.J., and FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

Abandoned, unnamed, and existing only on paper, a town street—surrounded by abutting property owners—awaits its fate on this petition for certiorari. But do we have jurisdiction to review the merits of a town council's decision to abandon the street? Because such an act is legislative in nature, we answer this question in the negative. We also reject various procedural challenges to the propriety of the council's abandonment order because we conclude that, in this case, the council satisfied the statutory notice and hearing provisions. Finally, we hold that, by attending the meeting at which the council voted to abandon the road, the plaintiffs, William and Flora Gardner (the Gardners), lack standing to complain about the town's alleged failure to serve them with personal notice of the council's abandonment order.

### Facts and Travel

Official maps in the Town of Cumberland (town) depicted an unnamed paper street in the town running perpendicular to Ryan Avenue and parallel to Mendon Road. The defendant David Miller and his wife (the Millers) owned property on both sides of this unnamed paper street. The Gardners operated a flower and gardening center on their property, which also abutted the unnamed paper street at its southerly end.

In 1996, the Millers petitioned the seven-member Cumberland Town Council (council) to abandon the paper street. The Gardners objected. The Millers withdrew the petition, but refiled it in 1998. Eventually, on March 4, 1998, the council referred this petition to the town's planning board, which recommended against the proposed abandonment. Thereafter, the council continued the petition several times without taking action on it. Ultimately, however, it duly notified the Gardners and other abutting owners that it would hold hearings on the petition, and publicly advertised that it would do so.

Pursuant to these notices and advertisements, the council initially convened a public hearing on the matter on April 1, 1998, but, at the Millers' request, it voted to continue the hearing for several months. The council again took up the petition, on October 7, 1998, when it heard from several witnesses, and received other evidence on the merits of the abandonment petition. It then continued the hearing on this subject to its meeting on November 4, 1998, after which it again put the matter over to its next meeting, on December 2, 1998. At this December meeting, after further discussion of the petition, the council voted unanimously to abandon the street.[1] All seven council members were present, including three members who were newly elected to their positions in November. Both the Millers and the Gardners also were present, as were their attorneys. Indeed, the attorneys for these parties expressed concern about the council's voting on the petition without the three new council members having been present at the council's previous meetings during which it heard testimony, received evidence, and heard arguments about the street in question. Nevertheless, the Gardners' attorney specifically asked the council to vote on whether the street should be abandoned. The town solicitor asked the new council members whether they felt comfortable voting on the abandonment peti-

---

1. Although the council's resolution of abandonment was dated June 3, 1998, the council did not vote to adopt the resolution until December 2, 1998, when it did so unanimous-

ly by a seven-to-zero vote. Thus, December 2, 1998, is the date indicated in typed print at the bottom portion of the resolution.

tion at that time. The new members all said that they were familiar with the matter and felt comfortable voting on the petition. The town solicitor advised the council members that the abandonment petition presented them with the issue of whether the street had ceased to be useful to the public. Thereafter, the council voted seven to zero in favor of abandoning the unnamed paper street.

The Gardners attempted to appeal the council's order to the Superior Court. But that court dismissed the appeal for lack of jurisdiction, indicating that G.L.1956 § 24–6–1,[2] which addresses the abandonment of highways or driftways by towns, does not specifically provide for such a right of appeal. As a result, although the Gardners initially appealed to this Court from the Superior Court judgment dismissing their complaint, they also petitioned this Court for the issuance of a writ of certiorari to review the council's abandonment order. In response, we issued the writ and granted the Gardners' motion to consolidate their appeal with the certiorari petition. Thereafter, however, the Gardners and the Millers jointly moved to dismiss the Gardners' appeal of the Superior Court judgment, which we granted. Thus, the only case pending before us is the Gardners' petition for certiorari.

The Gardners argue that the council's vote to abandon the road was invalid and that we should deem its approval of the abandonment petition to be a nullity. They contend that: (1) the vote to abandon the unnamed paper street violated applicable legal requirements because fewer than four of the council members heard all the evidence pertaining to the petition to abandon; (2) the vote by the council was erroneous in view of the reliable, probative, and substantial evidence on the record because all who testified at the council's abandonment hearings stated that members of the public still were using the street; (3) the council applied a different standard of review in approving the petition than the one that § 24–6–1 prescribes; (4) the Millers did not prove by clear and convincing evidence that the unnamed paper street ceased to be useful to the public; (5) the council violated § 24–6–1 because it failed to serve personal notice of its abandonment order upon the Gardners after it granted the Millers' petition; and (6) the council failed to set forth in its order any findings of fact and reasons for abandoning the road.

For the reasons summarized in this paragraph and detailed in the rest of our opinion, we reject these contentions. Because the council's order to abandon the street was a "final and conclusive" legislative act, *see* § 24–6–1(a), we lack jurisdiction to review the merits of this decision on certiorari. In addition, the Gardners'

**2.** General Laws 1956 § 24–6–1 provides, in pertinent part:

"**Order of abandonment–Reversion of title–Notice.–**

(a) Whenever, by the judgment of the town council of any town, a highway or driftway in the town, or any part of either, has ceased to be useful to the public the town council of the town is authorized so to declare it by an order or decree which shall be final and conclusive; and thereupon the title of the land upon which the highway or driftway or part thereof existed shall revert to its owner, and the town shall be no longer liable to repair the highway or driftway; provided, however, that the town council shall cause a sign to be placed at each end of the highway or driftway, having thereon the words 'Not a public highway', and after the entry of the order or decree shall also cause notice thereof to be published in a newspaper of general circulation * * * and a further and personal notice shall be served upon every owner of land abutting upon that part of the highway or driftway which has been abandoned who is known to reside within this state * * *."

procedural arguments fail because the council possessed a quorum when it voted in December 1998 to abandon the unnamed street in question and applicable law did not require council members voting thereon to have attended any previous hearings on this subject. In this case, we conclude, it was sufficient that the hearing minutes and the videotapes of the previous hearings on the petition were available for review by those council members who were not present at those hearings before they voted to abandon the street on December 2. Finally, the law did not require the council to set forth findings of fact or reasons for abandoning the road in its order granting the petition.

Also, the Gardners lack standing to complain about the town's alleged failure to effect personal service on them of the council's abandonment order because they and their lawyer attended the meeting at which the council members voted to abandon the unnamed paper street. Thus, because they received actual notice of the council's decision to abandon the street, they suffered no prejudice from any alleged lack of personal service on them of the order in question. Below, we elaborate on these reasons for denying the Gardners' petition for certiorari.

## Analysis

### I

### The Merits of the Council's Abandonment Order

A petition for certiorari will not lie to review an act of legislative discretion. *Godena v. Gobeille*, 88 R.I. 121, 126–27, 143 A.2d 290, 293 (1958). *See* also *The Newport National Bank v. Hawksley*, 92 R.I. 433, 436, 169 A.2d 616, 618 (1961); *Lumb v. Zoning Board of Review of Bristol*, 91 R.I. 498, 504, 165 A.2d 504, 507 (1960). "Every act involving judgment or discretion is not necessarily a judicial act

even though notice and hearing be required [by statute] before such act may be performed." *The Newport National Bank*, 92 R.I. at 437, 169 A.2d at 618 (quoting *R.I. Home Builders, Inc. v. Hunt*, 74 R.I. 255, 258, 60 A.2d 496, 498 (1948)).

" 'The determination of whether an act is judicial or quasi-judicial and not in substance purely legislative or administrative in character depends upon the nature of the act rather than the officer or body performing it.' Where a council acts not to determine presently contested rights but to direct some action in the future on the basis of policy or expediency it is acting legislatively and not judicially." *Godena*, 88 R.I. at 126–27, 143 A.2d at 293 (quoting *R.I. Home Builders, Inc.*, 74 R.I. at 258, 60 A.2d at 498).

When a town council decides to abandon a road or street because it has ceased to be useful to the public, it is acting prospectively and thus, "[w]hether it is expedient to discontinue a highway is a question for legislative decision * * *." *Id.* at 127, 143 A.2d at 293 (quoting 2 Elliott, *Roads and Streets* § 1182 (4th ed.1926)); *see also Attorney General v. Shepard*, 23 R.I. 9, 12–13, 49 A. 39, 41 (1901). Therefore, we lack jurisdiction on certiorari to review the Gardners' challenge to the merits of the council's decision to abandon the street in question. This is so because a town council's act in deciding whether the town should abandon a public highway because it "ceased to be useful to the public" under § 24–6–1 is a final and conclusive legislative determination that is immune from judicial review:

"[W]hen a town council acting under this statute [§ 24–6–1] passes on the question of whether a highway 'has ceased to be useful to the public,' it is in fact making a determination of the expediency of the proposed abandonment. *This is an exercise of purely legislative dis-*

*cretion which we will not review by writ of certiorari." Godena,* 88 R.I. at 128, 143 A.2d at 293. (Emphasis added.)

In this case, the council fully complied with the procedural requirements set forth in the abandonment provisions of §§ 24–6–1 and 24–6–2. The council strictly followed the statutory requirements because, pursuant to § 24–6–1, it served the Gardners and other abutting owners with personal notice of the abandonment petition. Pursuant to § 24–6–2, it also provided the Gardners and other abutters with notice and an opportunity to be "heard for or against the abandonment[.]" *See Wolfe v. City of Providence,* 77 R.I. 192, 205, 74 A.2d 843, 850 (1950) (explaining that when deciding whether to abandon a public street or highway a municipality must grant due process to the abutters of the street or highway subject to abandonment). Through their attorney, the Gardners appeared before the council; they provided testimony and photographs, as well as reasons why the town should not abandon the street; but they did not provide the council with any information about any alleged damages they would suffer as a consequence of the alleged abandonment, nor did they object to the council's failure to address damages in its decision. Thus, we hold, the council satisfied the procedural requirements with respect to the legislative aspects of this proceeding. The council did not ignore or violate the due-process protections set forth in the applicable statutes. As the Court explained in *D'Agostino v. Doorley,* 118 R.I. 700, 706, 375 A.2d 948, 951 (1977), the statutory process for abandonment must be followed scrupulously to secure the validity of the abandonment proceedings, but that is just what the council did in this case.

Thus, we must respectfully disagree with our dissenting colleague's opinion that "this case represents sloppy and uninformed practices by a newly elected town council."

■ Nevertheless, even though the council's determination concerning whether to abandon the street was an unreviewable legislative act, the council's concomitant duty to assess whether the abandonment caused any damages to abutting land owners such as the Gardners constituted a quasi-judicial act. *See Godena,* 88 R.I. at 126–27, 143 A.2d at 293. Thus, § 24–6–2 entitled abutting landowners such as the Gardners to pre-abandonment notice of the proposed abandonment, so that they could "appear, if they [saw] fit, and be heard for or against the abandonment, and as to the damage, if any, which they [would] sustain thereby." *See also* § 24–6–3 (entitling abutting owners to receive compensation from the town "for the damages, if any, sustained by them by reason of the abandonment"). The Gardners received this notice, appeared before the council, and fully availed themselves of the opportunity to argue against the proposed abandonment.

■ But the Gardners have not challenged the damages aspect of the council's proceedings with respect to the abandonment of this street, nor have they objected to any of the procedures that the council used or failed to use with respect to the assessment (or lack thereof) of any damages caused to them by the abandonment. We recognize that, under certain circumstances, an abutting property owner on an abandoned street may have a compensable right to have access to the street that cannot "be taken away by closing the highway without payment of just compensation." *Wolfe,* 77 R.I. at 205, 74 A.2d at 850. But the Gardners have not challenged this aspect of the council's proceeding, nor have they asserted any error in

the town's failure to pay them just compensation. Rather, their entire focus has been on the alleged impropriety of the council's legislative decision to abandon the road. Thus, we do not address the council's procedures or actions with respect to the assessment of damages because the Gardners did not raise this issue with the council or with us in their petition for certiorari. Moreover, if they had been aggrieved by the council's failure to award them damages, then their remedy was not to petition this Court on certiorari, but to petition the Superior Court and request that a jury assess their damages. *See* § 24–6–4.[3]

Finally, for the reasons previously stated, we also reject the Gardners' arguments that the Millers' allegedly failed to carry their burden of proof, that the quality and quantum of evidence to support such an abandonment was lacking, and that the council erred by failing to include findings of fact and reasons for the abandonment in any written decision or in its order granting the petition. However appropriate such specific procedural mechanisms may be to assessing the validity of judicial or even quasi-judicial proceedings, they are simply inapplicable to a legislative act such as this order of abandonment. *See, e.g., Smithfield Concerned Citizens for Fair Zoning v. Town of Smithfield,* 907 F.2d 239, 245 (1st Cir.1990) ("A broad latitude is given to legislative bodies such as the Town Council in their legislative determinations, and it is not the province of the courts to monitor the inputs into each legislative decision.").

## II

## Procedural Requirements Under § 24–6–1

Although it is not our province to review the discretionary aspects of a legislative act, we will review on certiorari petitioners' various procedural challenges to the council's road-abandonment order. The Gardners first assert that the council lacked a quorum at its December 1998 meeting, when it voted to approve the petition to abandon the unnamed paper street. This is so, they argue, because only three of the council members who attended that December meeting also were present to hear all the evidence presented at the two previous council meetings, in October and November 1998, when the council heard from certain witnesses and received other evidence concerning the abandonment petition. Section 408 of the Code of Ordinances of Cumberland, Rhode Island (Cumberland Code), indicates that "[f]our (4) members of the Town Council shall constitute a quorum for the transaction of business, but a smaller number

---

**3.** Given that the Gardners failed to present any evidence or testimony to the council about any damages they allegedly would suffer as a consequence of the street's abandonment, it is hardly surprising that the council did not award them any damages. In any event, the Gardners had up to one year after the council's adoption of the resolution to petition the Superior Court for a jury trial on damages, even though the council failed to award them any damages related to the abandonment. Thus, § 24–6–4 provides, in pertinent part:

"Any person aggrieved by the order or decree of a town council awarding damages

on the abandoning of a highway or driftway, or any part thereof, may *within one year after the making of the award* apply by petition to the superior court * * * setting forth the action of the town council and praying for an assessment of his or her damages against the town by a jury." (Emphasis added.)

Thus, with respect to any disagreement on the Gardners' part concerning the failure of the council to award them damages, the Gardners' remedy lay in the Superior Court, not with this Court via a petition for certiorari.

may adjourn from time to time." We construe the word "business" as referring to the council's decision-making process. *Cf. In re Rhode Island Commission for Human Rights,* 472 A.2d 1211, 1212, 1214 (R.I.1984) (explaining that the word "business" as used in G.L.1956 § 28–5–10— indicating that "'[t]hree (3) members of said commission shall constitute a quorum for the purpose of conducting the business thereof'"—refers to "the decision-making process," so that the commission requires a quorum to examine facts, consider evidence, and reach conclusions, but not to gather facts).

■ In this case, however, all seven council members were present for the decision-making process that occurred at the meeting on December 2, when the council voted to abandon the paper street in question. Seven council members also were present during most of the fact-gathering that occurred at the October and November council meetings. The mere fact that a majority of the council members present on December 2 were not also present during all portions of all previous council hearings on this petition did not deprive the council of a quorum on December 2, nor did it undermine the legitimacy of its legislative vote on that date to abandon the unnamed street. Moreover, even in a quasi-judicial context—as, for example, in *In re Rhode Island Commission for Human Rights,* 472 A.2d at 1214—we have held that "when a quorum of the commission reache[d] its decision after having access to a transcript of the hearing and also the evidence * * * [t]here is a presumption, soundly established, rationally reached, that administrative officials will properly consider the evidence before they reach a decision." This principle is in accord with the general rule that "in the absence of specific statutory direction to the contrary the deciding member or members of an administrative or quasi-judicial agency need not hear the witnesses testify. * * * The general rule is that it is enough if those who decide have considered and appraised the evidence." *Younkin v. Boltz,* 241 Md. 339, 216 A.2d 714, 715 (1966). Thus, even though only three of the seven council members who voted to abandon the road at the council's December 1998 meeting also were present during all parts of the October and November council meetings when the council also held hearings on this subject, we hold that the council's decision was valid because we presume, as indicated in *In re Rhode Island Commission for Human Rights,* that all seven council members who voted in favor of abandonment did so after educating themselves about the evidence pertaining to the merits of the petition before voting thereon. The record shows that written minutes and videotapes of the previous council hearings on the abandonment petition were available for review by the new council members before they voted to approve the petition on December 2, 1998. In these circumstances, "[t]he presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. Chemical Foundation, Inc.,* 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131, 142–43 (1926).

■ Indeed, "[a]ll reasonable presumptions must be indulged in support of the action of the officers to whom the law entrusted the proceedings * * *." *Ross v. Stewart,* 227 U.S. 530, 535, 33 S.Ct. 345, 348, 57 L.Ed. 626, 629 (1913). "And in ascertaining whether an 'informed' decision has been made, the courts accord the decision the presumption of regularity to which it is entitled * * * and refrain from probing 'the mental processes of the * * * [deciding officers] in reaching [their] con-

clusions.'" *Taub v. Pirnie*, 3 N.Y.2d 188, 165 N.Y.S.2d 1, 144 N.E.2d 3, 6 (N.Y.1957). Because they were not acting in a judicial capacity or assessing the credibility of witnesses on a contested factual issue, council members did not have to be physically present at any previous hearings or to have heard in person all the evidence that might be relevant to a particular legislative decision before they could cast their vote on such a matter. And section 408 of the Cumberland Code did not require that at least four of the same council members who eventually voted on a petition to abandon a street also must have been present at all previous hearings that pertained to such a decision before the council's vote thereon would be deemed valid. Thus, the Gardners were not deprived of the opportunity to be heard since at least a quorum of the duly elected council was present at all council meetings relating to the proposed abandonment, including the December 2 meeting at which the council voted unanimously to abandon the street.[4]

### III

### Personal Service of the Abandonment Order

■ The Gardners' final argument is that the council's abandonment order was ineffective and void because the town failed to serve them with personal notice of the order abandoning the paper street. After a town council orders or decrees the abandonment of a street, § 24–6–1(a) provides that "personal notice shall be served upon every owner of land abutting upon that part of the highway or driftway which has been abandoned * * *." The records we have received from the town in response to the writ fail to indicate whether the town caused the Gardners to receive personal service of the council's abandonment order. But even assuming, without deciding, that the town failed to serve the Gardners personally with notice of the council's abandonment decree, we hold that this circumstance is of no legal consequence in this case because the Gardners and their attorney attended the December 1998 meeting at which the council approved the petition to abandon the street in question. Thus, they are deemed to know that this event occurred, thereby satisfying the notification purpose for requiring personal service of the order.

■ Personal attendance at a meeting of a government body constitutes a waiver of the right to object to any defect concerning the notice of any proceedings that occur at that meeting, unless "the person who raises the issue of the defect in notices be in some way disadvantaged or

---

4. The dissent concludes that even though "the Gardners were provided with notice, argued against the abandonment and gave evidence about their potential damages, this was an empty exercise because the majority of the members of the town council who voted to abandon the roadway did not hear from them. To reject evidence, *a fortiori* a fact-finder is required to hear that evidence." The problem we have with this analysis is that the council, in its capacity as a legislative body, was not acting as a judicial fact-finder in deciding to abandon the street, but as a policymaker. Thus, it was not required to consider any particular evidence to make that decision, only to decide what, in its legislative judgment, was in the best interest of the town and whether, in its legislative judgment, the street had ceased to be useful to the public. Only with respect to the assessment of damages (or lack thereof)—which the Gardners do not challenge or complain about—was the council acting in a quasi-judicial capacity and, therefore, subject to the heightened procedural requirements of individualized due process. In any event, to the extent the Gardners were aggrieved by that aspect of the council's action, their remedy was to petition the Superior Court "praying for an assessment of [their] damages," as stated in § 24–6–4, but not to petition this Court for certiorari.

aggrieved by such defect." *Graziano v. Rhode Island State Lottery Commission,* 810 A.2d 215, 222 (R.I.2002) (holding that the plaintiffs lacked standing to object to the legal sufficiency of a prehearing notice for a Rhode Island Lottery Commission meeting because they attended the meeting in question and, consequently, were aware of its purpose and what happened at the meeting); *see, e.g., Ryan v. Zoning Board of Review of New Shoreham,* 656 A.2d 612, 616 (R.I.1995) (explaining that a party who appears before the zoning board waives their right to object to an apparent deficiency in the notice for the hearing); *Estate of Konigunda v. Town of Coventry,* 605 A.2d 834, 835 (R.I.1992) (holding that a petitioner represented by an attorney waived the right to object to lack of notice concerning a governmental meeting by appearing and opposing the official action taken at the meeting); *Zeilstra v. Barrington Zoning Board of Review,* 417 A.2d 303, 307 (R.I.1980) (stating that a party appearing before a zoning board waives the right to object to a claim that it failed to receive proper notice); *Champagne v. Zoning Board of Review of Smithfield,* 99 R.I. 283, 287–88, 207 A.2d 50, 53 (1965) (acknowledging the principle that attending a zoning board hearing amounts to a waiver of the notice requirements).

Here, the actual notice of the abandonment order that the town may not have served personally on the Gardners contained no "particulars" of which the Gardners were not otherwise aware. Flora Gardner was present at the initial hearing in April 1998, and her husband or their attorney was present at all subsequent hearings during which substantive issues were discussed leading up to the council's vote to abandon the street on December 2, 1998. Thus, the Gardners failed to make any "showing of grievance or disadvantage" that a party who has attended the hearing in question must demonstrate "to establish standing to object to the notice" or lack thereof. *Graziano,* 810 A.2d at 222.

Given these circumstances, the Gardners waived their right to object to the alleged lack of personal service on them of the abandonment order because they and their attorney attended the December 1998 meeting at which the council voted to abandon the street. Consequently, they were aware that the council voted seven to zero to approve the Millers' petition to abandon the unnamed paper street. Because they possessed actual notice of the council's order, the Gardners will not be heard to complain about the town's alleged failure to serve them personally with a copy of the order.

## Conclusion

For the foregoing reasons, we deny the Gardners' petition for certiorari, quash the writ as improvidently granted, affirm the town's abandonment order, and return the records to the town with our decision endorsed thereon.

Justice FLAHERTY did not participate.

GOLDBERG, Justice, dissenting.

I respectfully dissent. I am of the opinion that the majority's conclusions in this case are incorrect and that the Gardners were deprived of their right to procedural due process. Because the Gardners enjoyed a constitutionally protected property interest in accessing their land through this public roadway, and the statute under which a municipality is authorized to abandon a street or highway requires that specific procedural guarantees be afforded to the abutters *before* an abandonment decree is issued, this abandonment order ought not stand.

This Court has declared that "[a]n abandonment of a highway is, by its nature,

very similar to an eminent domain proceeding" because the loss of "easement of access from abutting landowners under the sovereign's power of eminent domain" is considered a taking, thus requiring notice to a statutorily defined class of persons and compensation for damages. *D'Agostino v. Doorley*, 118 R.I. 700, 705, 375 A.2d 948, 950–951 (1977). As with proceedings involving the condemnation of land for public purposes, this Court vigilantly has policed the statutory process that allows such a taking. *Id.* Although the wisdom and merits of a takings decision are left to the legislative body, the enabling statutes must be strictly followed. Significantly, in *Golden Gate Corp. v. Sullivan*, 112 R.I. 641, 314 A.2d 152 (1974), we upheld as constitutional a statute authorizing the condemnation of petitioner's land for public purposes that did not provide for a public hearing before the taking. We concluded that the necessity and expediency of taking private land for public use was a legislative question for which a pre-deprivation hearing was not constitutionally mandated. *Golden Gate Corp.*, 112 R.I. at 644, 314 A.2d at 154. Such is not the case with respect to abandonment proceedings because the enabling statute requires actual notice to the abutters, a public hearing and an opportunity to argue against the abandonment and a contemporaneous award of damages.

It is well settled that a property owner's right to access a public street that abuts his or her lot is a valuable property right that cannot "be taken away by closing the highway without payment of just compensation and without due process of law." *Wolfe v. City of Providence*, 77 R.I. 192, 205, 74 A.2d 843, 850 (1950). Although the process that is due is dictated by the particular circumstances in a given case and the right to a pre-deprivation hearing does not exist in every situation, *Barber v. Exeter West Greenwich School Committee*, 418

A.2d 13 (R.I.1980), when a statute requires that "*before* proceeding to abandon any highway or driftway or any part thereof, [every town council] shall give notice to the owners of the lands abutting" the roadway, "to appear * * * and be heard," then an owner's right to procedural due process is set forth in the statute. General Laws 1956 § 24-6-2. (Emphasis added.) This is a mandatory requirement. The General Assembly, in enabling municipalities to abandon a public highway or driftway, "has recognized these [constitutional] limitations on its authority by expressly providing that when a town desires to abandon a public highway it shall first accord to abutters thereon such due process." *Wolfe*, 77 R.I. at 205, 74 A.2d at 850. Pursuant to § 24-6-2, notice of the proposed abandonment is required so that abutters may appear, "if they see fit, and be *heard for or against the abandonment,* and as to the damage, if any, which they will sustain * * *." (Emphasis added.) We previously have held that "[i]f abandonment [of a street] is necessary or desirable there is a statutory procedure for accomplishing it[,]" and the limitations on a municipality's authority to deprive an abutter of a valuable property right are clearly and unambiguously set forth in the statute. *Wolfe*, 77 R.I. at 204–05, 74 A.2d at 850.

Significantly, and in contrast to the eminent domain statutes, "although not constitutionally required to do so, [the Legislature] has provided for prior hearings" in abandonment proceedings, and these "statutory processes must be *scrupulously followed* in these instances or the actions may be held to be invalid." *D'Agostino*, 118 R.I. at 706, 375 A.2d at 951. (Emphasis added.) In the case before the Court, the Gardners are not challenging the constitutionality of the statute, nor are they complaining about a lack of procedural protec-

tions. Rather, the Gardners have argued, *inter alia,* that the procedural protections supplied by the statute were ignored by the Town of Cumberland. I agree. In *O'Reilly v. Town of Glocester,* 621 A.2d 697, 700 (R.I.1993), we declared that "[p]ursuant to § 24–6–2 a town must hold a hearing so that [abutting] landowners may argue against the abandonment and present evidence concerning the damage the landowners will incur if the abandonment proceedings go forward." It is painfully apparent that no meaningful hearing occurred in this case and that the town violated both the statute and its own procedure.

Although, as the majority concludes, the finding by the town council, in accordance with § 24–6–1, that a highway "has ceased to be useful to the public" and title therefore "shall revert to its owner," is a legislative determination that is unreviewable by this Court, the Legislature, in enacting this enabling legislation clearly set forth the procedures that must be followed to accomplish this result. Included in these procedural protections is a requirement for actual notice to an abutter and an opportunity "to appear, if they see fit, and be heard for or against the abandonment, and as to the damage, if any, which they will sustain thereby." Section 24–6–2. Additionally, "whenever it abandons the whole or any part of a public highway or driftway, [the town council] shall *at the same time* appraise and award the damages." Section 24–6–3. (Emphasis added.) None of that happened in this case.

The hearing procedure that the majority has affirmed, was, in my opinion, a meaningless exercise. The council members who voted to abandon the street did not attend the hearing and never heard from the Gardners. Because a majority of the members of the town council were not present at the public hearing, the Gard-

ners were deprived of their statutorily guaranteed opportunity to be heard. Significantly, the minutes of the town council characterize this procedure as a public hearing and reflect that the witnesses were placed under oath and gave sworn testimony. It is undisputed, however, that this proceeding, held on October 7, 1998, was concluded before the town's biennial elections and that a new town council was elected thereafter. It was the newly elected legislative body that voted in this case, and four of its members, a majority, did not attend the public hearing. One member of the new council, who had sat on the previous council and was initially present for the hearing, absented herself because of illness. Three members were newly elected to the council and were neither present for, nor participated in, the Gardners' only opportunity to be heard. Thus, the suggestion that the council complied with the statutory guarantees of notice and an opportunity to be heard is simply wrong. Although the Gardners were provided with notice, argued against the abandonment and gave evidence about their potential damages, this was an empty exercise because the majority of the members of the town council who voted to abandon the roadway did not hear from them. To reject evidence, *a fortiori,* a factfinder is required to hear that evidence.

Certainly, the town council could have legitimately rejected the Gardners' arguments against abandonment and lawfully determined that the roadway ceased to be useful to the public. That is precisely what occurred in *Godena v. Gobeille,* 88 R.I. 121, 143 A.2d 290 (1958), a case relied upon by the majority, in which the Jamestown town council complied with the abandonment procedures set forth in the enabling act and this Court was confronted with a challenge to the wisdom and merits of the legislative determination. We held that certiorari does not lie to review a

purely legislative determination because judicial discretion is not employed in rendering the decision. *Godena*, 88 R.I. at 128, 143 A.2d at 293. That is not the issue before us today.

The fact that the Cumberland town solicitor, when confronted by both the Gardners and the applicants/defendants about this obvious flaw in the legitimacy of the proceeding, asked the members of the council whether they felt comfortable voting on the abandonment petition and received an affirmative response is of no moment to the statutory guarantee of procedural due process. The relative comfort level of newly elected council members who never heard from the Gardners is irrelevant to the issue of due process. We have held previously that abandonment procedures "must be *scrupulously followed.*" *D'Agostino*, 118 R.I. at 706, 375 A.2d at 951. (Emphasis added.) Moreover, I respectfully reject as unavailing the majority's conclusion that the provision of the Cumberland Code indicating that "four (4) members of the Town Council shall constitute a quorum for the transaction of business" somehow supplies the constitutional processes guaranteed by the statute. The same quorum that heard from the abutters did not vote on the petition. Thus, the only opportunity for the Gardners to appear and be heard about prospective council action that ultimately deprived them of a valuable property right was a nullity.

I further reject the conclusion of the majority that an abandonment solely is a legislative exercise. As noted, valuable and constitutionally protected property interests are at stake and a pre-abandonment hearing, although not constitutionally required, is required by statute. This Court previously has held that "the *procedure* prescribed by the [abandonment] statute is in part judicial and in part legis-

lative." *Godena*, 88 R.I. at 127, 143 A.2d at 293. (Emphasis added.) The requirement that the council notify the abutters, afford them an opportunity to argue against the proposal and assess damages, if necessary, is a judicial function, notwithstanding that the ultimate abandonment decision is a legislative act of prospective application. *Id.*

In *Wolfe*, 77 R.I. at 203, 74 A.2d at 849, this Court declared that "[i]n this state a municipality may permanently close or abandon a street only after formal proceedings of a semijudic[i]al nature in accordance with [law.]" That is, a proceeding that "is in part judicial and in part legislative." *Godena*, 88 R.I. at 127, 143 A.2d at 293; *See Frank W. Coy Real Estate Co. v. Pendleton*, 45 R.I. 477, 123 A. 562 (1924) (abandonment petitions involve semijudical proceedings to be undertaken by the town council). In *Wolfe*, *supra*, we were confronted with a statute that authorized the City of Providence to enact a traffic ordinance that permanently closed a city street to vehicular traffic and severely restricted access to plaintiff's premises. We concluded that this was not a legitimate traffic regulation within a municipality's police power but amounted to an abandonment of the roadway. We concluded that the Legislature may not authorize cities and towns to permanently prohibit vehicular traffic on a street or highway unless it is accomplished through the statutorily prescribed abandonment procedures. "An abutter's right in the street is a property right and cannot unreasonably be interfered with * * * taken away * * * without payment of just compensation and without due process of law." *Wolfe*, 77 R.I. at 205, 74 A.2d at 850. Accordingly, "when a town desires to abandon a public highway it shall *first* accord to abutters thereon such due process." *Id.* (Emphasis added.)

Finally, in contravention of § 24–6–3, the town council failed to assess damages and, in violation of § 24–6–1 and its own resolution, the town council failed to provide the Gardners with personal notice of the abandonment decree. I reject the majority's opinion that the town's failure to comply with its own resolution "is of no legal consequence in this case" because, the majority concludes, the Gardners, having attended the meeting, "are deemed to know that this event occurred, thereby satisfying the notification purpose for requiring personal service of the order." According to the statute, the "event" is not concluded by the vote of the council; the Gardners were entitled to know the particulars, including a decision on damages, none of which occurred during this unorthodox proceeding. I am not prepared to overlook the statutory mandate of notice that was included in the council's own order. According to the record provided to this Court, the resolution of abandonment filed in the land evidence records of the town, although allegedly voted upon on *December 2, 1998*, is dated and attested to by the town clerk as having been enacted on *June 3, 1998*, six months earlier. How a resolution of the town council can be signed and attested to by the clerk six months before the actual vote of the council is simply inexplicable. Moreover, according to § 24–6–4, anyone aggrieved by the order or decree awarding damages may, "within one year after the making of the award[,]" petition the superior court for a jury determination of damages against the town. At what point does the one-year time limitation begin to run? As noted in *O'Reilly*, 621 A.2d at 700, the purpose of notice is to inform the public that the town has terminated its obligation to maintain the right-of-way and that title to the land on which the right-of-way sits has reverted to the owners of the property adjacent to the right-of-way. Further, the abutters are entitled "to an assessment of damages once a town *officially abandons* its obligation to maintain a right-of-way." *Id.* (Emphasis added.) In light of the town council's statutory obligation to personally serve an abutting landowner with notice of the abandonment, the council's own resolution ordering notice and the fact that the one-year limitations period to claim a jury trial begins to run as of the date of the decree, I deem these procedural deficiencies to be equally fatal to the validity of the abandonment.

In conclusion, at best, this case represents sloppy and uninformed practices by a newly elected town council. Consequently, I dissent. For the reasons set forth herein, I would grant the petition for certiorari and quash the abandonment decree.